Jaysen McCleary
1763 Red Crow Road
Victor, MT 59875
Telephone: (406) 880-4424
Email: jaysenmccleary@gmail.com
Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| JAYSEN McCLEARY,<br>Plaintiff,<br>vs.<br>JPMORGAN CHASE BANK, N.A.;<br>HALLIDAY, WATKINS & MANN, P.C.; and<br>JOSEPH SEIDLIN, in his official capacity as a Judge of the Iowa District Court for the Fifth Judicial District,<br>Defendants. | **Cause No. CV 26-____-M-____**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES**<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**JURY TRIAL DEMANDED** |

On June 29, 2026, Chase wrote that once it received Plaintiff's information it would not schedule a foreclosure sale while it reviewed his application. On August 6, 2026, Chase disclosed a foreclosure sale of

his home set for November 30, 2026. This action followed. On October 9, 2026, while Plaintiff's application was under review, Chase sued to foreclose.

## NATURE OF THE ACTION

1. Chase manufactured the default it now forecloses on. Chase escrowed for a 2026 property tax it knew Montana had exempted, charged Plaintiff for lender-placed insurance without delivering the notices federal law requires, inflated the monthly payment on those two charges, then refused, returned, and suspended the payments Plaintiff made every month for fourteen consecutive months. Chase reported the months it refused as unpaid. Plaintiff paid Chase $5,521.62 on the twelfth of every month for fourteen consecutive months, June 2025 through July 2026 — $1,100.66 above the principal-and-interest installment every month, more than $15,000 over the life of the application. Chase now

forecloses a $3,800,000 property over a $37,907.97 arrearage it built from the payments it refused.

2. On June 29, 2026, Chase wrote: “When we receive all of your information, we won’t refer your loan to foreclosure or schedule a foreclosure sale while we’re reviewing your application. If a foreclosure sale has already been scheduled, we may not be able to stop it, due to court rules, court orders or the timing of the foreclosure sale.” Plaintiff delivered the application on July 31, 2026. Chase confirmed receipt by telephone on August 4, 2026 and in writing on August 6, 2026. The same August 6 letter disclosed a foreclosure sale set for November 30, 2026.

3. Chase also denied Plaintiff, who has a TBI, the one accommodation tied to the harm: a telephone or text notification before his homeowners insurance lapsed. Chase answered that its “standard process is to send notifications

by mail" and that it was "not able to make exceptions to this procedure." No individualized assessment preceded that refusal.

4. Plaintiff seeks a temporary restraining order and preliminary injunction barring any foreclosure sale; an order correcting the escrow and crediting the refused payments; declarations on the terms on which any sale under the power of sale may proceed and on the effect of certain Iowa orders on title to Montana land; and damages under RESPA, the FCRA, the Fair Housing Act, and Montana law.

## JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331. The claims arise under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. Part 1024; the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b); the Fair Housing Act, 42 U.S.C. §§ 3604(f),

3605, and 3613; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.; and the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. Part 1026. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, supplies a remedy.

6. This Court has supplemental jurisdiction over the Montana claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

7. In the alternative, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a resident of Montana. Chase is a national banking association with its main office outside Montana. Halliday, Watkins & Mann, P.C. is a professional corporation with its office in Salt Lake City, Utah. The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue lies in this District under 28 U.S.C. § 1391(b)(2) and 12 U.S.C. § 2614. The Property sits in Ravalli County, Montana, within the Missoula Division. D. Mont. L.R. 1.2(c)(5).

9. Section 3613(a)(1)(A) of Title 42 permits this action within two years of the occurrence or termination of the discriminatory housing practice. Chase refused the accommodation by letter dated June 1, 2026 and refused it again on August 6, 2026.

9A. This Court has personal jurisdiction over Judge Seidlin as to the single declaratory count pleaded against him. His May 28, 2026 order was expressly aimed at Montana: it reaches "all real and personal property" of the record owner of real property sitting in Ravalli County, Montana, and the application it granted asked in terms for a finding that Plaintiff "fraudulently transferred real property located at

1763 Red Crow Rd, Victor, MT 59875." The order's intended effect — clouding and freezing Montana land — is felt in Montana and nowhere else. A defendant whose intentional act is expressly aimed at the forum, and who knows that the brunt of its effect will be felt there, must answer for that act in the forum; the injured forum resident need not travel to the defendant's State to seek redress. Calder v. Jones, 465 U.S. 783 (1984).

9B. Subject-matter jurisdiction over the counts against Judge Seidlin rests on 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, because the controversy turns on federal constitutional limits — due process and the Full Faith and Credit Clause — on one State's power to adjudicate title to land in another and to bind a resident of another State it never served. The relief sought against Judge Seidlin is declaratory and, in the

alternative, prospective only. Injunctive relief against a judicial officer is sought only on the terms 42 U.S.C. § 1983 permits: where a declaratory decree is violated or declaratory relief is unavailable.

9C. If the Court concludes that Judge Seidlin is misjoined, the remedy is to drop or sever that party under Fed. R. Civ. P. 21, which provides that misjoinder is not a ground for dismissing an action. The claims against Chase and Halliday do not depend on any claim against Judge Seidlin.

**PARTIES**

10. Plaintiff Jaysen McCleary resides at 1763 Red Crow Road, Victor, Montana 59875 (the "Property"). Plaintiff sustained a traumatic brain injury ("TBI") in January 2014 that impairs working memory and processing speed. Plaintiff receives Social Security Disability Insurance and a monthly total-disability benefit under a MassMutual policy ending 1234.

11. Defendant JPMorgan Chase Bank, N.A. ("Chase") originated and services Plaintiff's mortgage loan, account ending 1029 (the "Loan"), secured by the Property. Plaintiff is the sole borrower and mortgagor. Record title to the Property is held by Bela Animal Legal Defense and Rescue ("Bela"), a nonprofit corporation registered with the Montana Secretary of State under an entity number ending 2371, by a quitclaim deed Plaintiff executed on July 14, 2020 and recorded on December 3, 2024. Counts I through X, XII, and XIII are Plaintiff's own claims as borrower and mortgagor. Counts XI and XIV are pleaded by Plaintiff and, upon joinder through licensed counsel, by the record owner. An entity "may appear only by an attorney." D. Mont. L.R. 83.8(b).

12. Defendant Halliday, Watkins & Mann, P.C. ("Halliday") is a law firm. Under its File No. MT22788 it wrote to Plaintiff on June 30, 2026, and to "Current Occupant" of the Property on

July 13, 2026: "Our office is conducting a foreclosure sale on property located at 1763 Red Crow Rd, Victor, MT 59875-9792." It sent Plaintiff a written notice stating "Total amount of the debt now: $ 918,485.37" and setting August 13, 2026 as the date to dispute it. The same notice states: "Halliday, Watkins & Mann, P.C. is a debt collector. We are trying to collect a debt that you owe to JPMorgan Chase Bank, National Association." Chase's August 6, 2026 letter identifies Halliday as "the attorney handling the foreclosure." Halliday transacts business in Montana and directed these acts at Montana real property.

12A. Defendant Joseph Seidlin is a Judge of the Iowa District Court for the Fifth Judicial District. He is named in his official capacity only, for declaratory relief concerning the effect, on Montana real property and on a Montana resident, of an order he signed on May 28, 2026 in Starbuck v. Bela

Animal Legal Defense and Rescue, Polk County No. EQCE087175, and, in the alternative, for prospective relief against the continuing enforcement of that order in violation of the Fourteenth Amendment. Plaintiff seeks no damages against Judge Seidlin and does not ask this Court to review, reverse, or vacate any Iowa judgment. Plaintiff asks what that order can and cannot reach as a matter of law, and that its enforcement beyond those limits stop.

## FACTUAL ALLEGATIONS

### A. The Loan, the Mortgage, and the payments Plaintiff made.

13. Chase originated the Loan in July 2020 in an original principal amount of $1,000,000.00. Chase's monthly statements of June 16 and July 16, 2026 state: "Maturity date 08/2050" and "Interest rate (Until 09/2030 pmt) 3.37500%." Chase's Closing Disclosure of July 8, 2020 records an appraised property value of $3,800,000.00. As of

August 14, 2026 the unpaid principal balance stood at $883,529.19.

14. Plaintiff declined an escrow account at closing. The Closing Disclosure marks: “will not have an escrow account because you declined it.” Every escrow charge described below is a servicing decision Chase made after closing.

15. The Loan is secured by a Mortgage recorded in Ravalli County on July 24, 2020, as a document whose number ends 6510 (the “Mortgage”). The Mortgage states that the Borrower “does hereby mortgage, grant and convey to Lender, with power of sale,” the Property. The Mortgage names no trustee.

16. Section 23 of the Mortgage states: “The area of the Property is more than 40 acres.” The Small Tract Financing Act reaches “real property of an area not exceeding 40 acres.” Mont. Code Ann. § 71-1-304(1). The Mortgage is not a trust

indenture under that Act. A sale under it is a sale under the power of sale in a mortgage, governed by Title 71, chapter 1, part 2. Mont. Code Ann. §§ 71-1-223, 71-1-224, 71-1-228.

17. Section 22 of the Mortgage provides that if Lender invokes the power of sale, “Lender shall, in accordance with § 71-1-224, M.C.A, advertise the sale for at least 30 days before the date for such sale,” post notices, and “personally serve the notice of sale, at least 30 days before the date of sale, upon the occupant of the Property advertised for sale, upon the Borrower if located within the state of Montana, and upon every person having or claiming an interest of record in the Property advertised for sale who may be found within the state of Montana.” It also provides: “Lender may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.”

18. Section 22 requires notice before acceleration that specifies "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured," and that informs the Borrower "of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Chase's June 16 and July 16, 2026 statements state: "Your Account has been Accelerated."

19. Section 19 of the Mortgage gives the Borrower "the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to

reinstate; or (c) entry of a judgment enforcing this Security Instrument."

20. From June 2025 through July 2026, Plaintiff paid $5,521.62 by automatic payment every month. Bank of America records show fourteen consecutive payments, each marked Paid.

**B. Chase charged for lender-placed insurance without delivering the required notices.**

21. Plaintiff's hazard carrier canceled his policy without notice to him. Chase's records date the lapse to May 3, 2024. Plaintiff learned of the lender-placed insurance only when his November 2025 mortgage demand doubled. He wrote Chase on November 5, 2025: "I just learned an Assurant force-placed policy was added around May 2025, which doubled my payment. I did not receive the required 45-day or 15-day notices." He bound his own policy effective December

19, 2025, submitted the declarations page through Chase's insurance portal on December 22, 2025, and resubmitted on January 13, 2026 with the request: "Please credit back my forced insurance asap. It's hurting my credit rating." Chase's portal answered "Information Not Processed" on November 6, 2025, December 30, 2025, January 15, 2026, and January 20, 2026. Chase's notices of February 2 and March 4, 2026 nonetheless open: "We received the insurance information you provided."

22. Chase's letters do not agree on what period lacked coverage or what that period cost. Chase's letter of January 14, 2026 identifies the uninsured period as May 3, 2025 to June 19, 2025 and the charge as $2,591.00. Its letter of March 27, 2026 states: "We received proof of insurance coverage, and we cancelled the LPI policy effective June 19, 2025." Its notices of February 2 and March 4, 2026 assert no coverage

from June 19, 2025 to December 19, 2025. Its letter of June 1, 2026 describes the gap as "May 3, 2025, to December 19, 2025" and states that "[t]he insurance purchased for this gap is $10,061." Chase's own escrow transaction history shows two charges for that span, $2,591.00 net and $10,061.00, totaling $12,652.00. Chase has never reconciled these figures.

23. Chase delivered neither the written notice required at least 45 days before assessing the charge nor the reminder required at least 15 days before, under 12 C.F.R. § 1024.37(c) and (d). Plaintiff received no such notice.

24. The regulation conditions the charge on delivery, not on drafting. Section 1024.37(c)(1)(i) requires the servicer to "[d]eliver to a borrower or place in the mail" the first notice, and § 1024.37(d)(1) imposes the same requirement for the reminder. The parallel statute, 12 U.S.C. § 2605(l)(1),

requires that the servicer "has sent, by first-class mail, a written notice." Chase has produced copies from its own records. A retained copy shows that Chase generated a document. It does not show that Chase mailed it.

25. Chase's escrow transaction history for July 10, 2020 through June 26, 2026, which Chase enclosed with its August 6, 2026 letter, shows five lender-placed insurance charges, not one. Chase charged $14,886.00 on October 2, 2021 and refunded it on October 22, 2021. Chase charged $20,294.00 on August 10, 2024 and refunded it on August 15, 2024. Chase charged $19,880.00 on December 7, 2024 under a certificate ending 9008, which its carrier issued on December 12, 2024 for a term that had begun May 3, 2024; Chase has never refunded that charge. Chase charged $20,082.00 on May 15, 2025 under the same certificate, renewed May 20, 2025 for May 3, 2025 to May 3, 2026; Chase canceled that certificate effective

June 19, 2025 and refunded $17,491.00 on January 15, 2026, 210 days after the cancellation date. Chase charged $10,061.00 on April 3, 2026 under a certificate ending 0112, which its carrier did not issue until April 9, 2026, for a term stated as June 19, 2025 to June 19, 2026, and which Chase canceled the day it issued, effective December 19, 2025. Chase has never refunded the $10,061.00. The unrefunded lender-placed charges total $32,532.00.

26. Section 1024.37(b) forbids any such charge unless the servicer has a "reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." A servicer that charges a full annual premium five times in five years, refunds three of them in whole or in part, and issues two of the certificates months after the coverage period they describe had begun or ended has not made that

determination. Each charge independently violates the notice requirements pleaded above.

27. The second certificate insured nothing. Chase's first notice concerning the period June 19, 2025 to December 19, 2025 is dated February 2, 2026, six weeks after that period ended. Its second notice is dated March 4, 2026. Both notices open: "We received the insurance information you provided." Chase charged the $10,061.00 premium on April 3, 2026, its carrier issued the certificate on April 9, 2026, and Chase canceled it on April 9, 2026. A policy issued after the coverage window has closed protects no one; it converts a paper gap into a charge. Chase's own letters of January 14 and March 27, 2026 fix June 19, 2025 as the date coverage resumed.

28. Chase's refund came late, and the delay built the default. Section 1024.37(g) requires a servicer, within 15 days of

receiving evidence of the borrower's coverage, to cancel the force-placed policy and refund all premium charges for the period of overlapping coverage. Chase received Plaintiff's proof of coverage no later than December 22, 2025. Chase fixed the cancellation date at June 19, 2025, yet posted the $17,491.00 refund on January 15, 2026 — at least 24 days after receiving the proof and 210 days after the date Chase itself set as the end of the overlap. Chase paid none of it to Plaintiff. It credited the $17,491.00 to an escrow account its own premium charges had driven to a negative balance of $30,763.74, and the escrow history shows the balance moving only from –$30,763.74 to –$13,272.74. Exhibit I. In the interval Chase ran the escrow analysis that set Plaintiff's monthly payment at $10,830.69: principal and interest of $4,420.96; an escrow deposit of $2,580.49 to fund a projected $20,082.00 lender-placed renewal in May 2026

and $10,883.90 in property tax; and a shortage recovery of $3,829.24 per month against an escrow deficit that carried the $20,082.00 premium charged May 15, 2025 and the unrefunded $19,880.00 charged December 7, 2024. Chase's January 21, 2026 analysis, run six days after the refund, revised projected insurance to $0.00 and projected property tax to $0.12 and reset the payment to $4,458.75 effective February 1, 2026. Chase measured Plaintiff's $5,521.62 payments against the $10,830.69 figure for every installment due October 1, 2025 through January 1, 2026.

## C. Chase escrowed for a property tax it knew Montana had exempted.

29. The Montana Department of Revenue granted a 100% exemption on the Property for Tax Year 2026, effective April 8, 2026.

30. Chase's escrow analysis of March 17, 2026 projected "$15,150.34, for your property taxes," and stated: "In November 2026, we expect to pay $7,575.19 for your property taxes." That disbursement will never occur. The projection generated a claimed escrow shortage of $7,915.07 and raised the monthly escrow deposit to $1,262.53.

31. Chase admits it knew of the exemption no later than May 4, 2026. Its June 1, 2026 letter states: "We previously spoke about the property tax exemption on May 4, 2026. During this call, it was explained that no changes could be made until the pending tax payment was processed." Chase corrected the analysis only on June 11, 2026, and never reversed the arrears the erroneous projection produced.

32. Chase ran four escrow analyses in five months, each producing a different payment: January 21, 2026 ($4,458.75 effective February 1); March 17, 2026 ($6,343.08 effective

May 1); May 19, 2026 ($5,918.98 effective May 1, eighteen days before the analysis date); and June 11, 2026 ($5,544.47 effective August 1). The May 19 and June 11 analyses project property tax of $0.06 and $0.12. Both nonetheless carry a shortage, $17,976.06 and $13,482.03, because the escrow account still carries the April 2026 "ASSURANT SPECIALTY PROP" withdrawal of $10,061.00 described in paragraph 27 and the residue of the earlier lender-placed charges.

33. Section 1024.17(c)(7) of Title 12 of the Code of Federal Regulations obligates a servicer that knows the charge for an escrow item in the next computation year to use that known amount. Chase knew the 2026 charge would be zero.

## D. Chase refused, combined, and returned conforming payments, then reported the months unpaid.

34. Chase billed $4,458.75 for the February 1, March 1, and April 1, 2026 installments. Bank of America records show $5,521.62 cleared on February 12, March 12, and April 10, 2026. Plaintiff paid $1,062.87 more than Chase demanded, three consecutive months. Chase reports all three months delinquent.

35. Chase combined accepted payments to satisfy inflated installments. Its March 27, 2026 letter states: “We confirmed we received your payments for $5,521.62 on December 12, 2025, and January 12, 2026. We combined these payments to satisfy your November 2025 monthly payment.... The amount due for your November 2025 payment was $10,830.69.... This left remaining funds for $425.10 in suspense.” Chase repeated the practice with the February 12

and March 12, 2026 payments, applying both to December 2025 and holding $637.65 in suspense.

36. Each $10,830.69 installment carried an escrow component of $6,409.73. Chase applied the installment due December 1, 2025 on March 12, 2026 (principal $1,919.79, interest $2,501.17, escrow $6,409.73) and the installment due January 1, 2026 on May 18, 2026 on the same terms. Both applications post-date the January 15, 2026 refund of $17,491.00 and the January 21, 2026 analysis that reduced the escrow deposit to $0.01 and the payment to $4,458.75. Chase swept $12,819.46 of Plaintiff's money into escrow to fund a deposit its own analysis had already eliminated, then reported the months that money came from as unpaid.

37. Chase returned check 5075 for $5,521.62 by letter dated June 23, 2026, and check 5076 for $5,521.62 by letter dated July 21, 2026, stating the funds "aren't enough to bring your

account up to date" and demanding certified funds. Chase's reinstatement quote of July 31, 2026 states: "If we receive a payment that isn't enough to reinstate the loan, we will return the funds."

38. Chase's own payment history, enclosed with its August 6 and September 2, 2026 letters, posted the identical $5,521.62 payment as a full "PAYMENT" (principal, interest, and $1,100.66 to escrow) for every installment due January 1 through September 1, 2025. Beginning August 12, 2025 Chase routed the payment through suspense first, but still applied it in full the next day for the August and September installments. The amount first fell short with the installment due October 1, 2025, which Chase had raised to $10,830.69; Chase satisfied that installment on November 12, 2025 by combining two payments. Chase's own ledger

treated $5,521.62 as a full payment until Chase changed the number.

39. Chase's September 2, 2026 letter states: "Once the loan entered into a foreclosure status, payments could not be accepted if they were not sufficient to reinstate the loan." The payment history enclosed with the same letter refutes it. On August 14, 2026, nine days after the date Chase says it "temporarily suspended the foreclosure activity" and four days before it quoted $37,907.97 to reinstate, Chase accepted $5,544.47, applied $4,458.75 of it as the installment due February 1, 2026 (principal $1,930.60, interest $2,490.36, escrow $37.79), and placed the remaining $1,085.72 in suspense, leaving an unapplied balance of $1,935.92. The same letter then states: "Your March 2026 payment is due, as well as all subsequent payments." Chase thus concedes that the February 1, 2026 installment is paid, at $4,458.75,

and accepts non-reinstating payments when it chooses to. Each of the $5,521.62 payments Chase received on February 12, March 12, and April 10, 2026 exceeded that installment amount by $1,062.87.

40. Chase's June 16, 2026 statement says that a payment to bring the account current "must be made via wire or certified funds." Its July 16, 2026 statement says: "Your payment must be received by certified funds." Chase nonetheless accepted and applied Plaintiff's check no. 5078 on August 14, 2026. Plaintiff's October 2026 payment, Bank of America bill-pay check no. 5080 for $5,544.47 dated October 9, 2026, was the exact monthly payment Chase's June 11, 2026 escrow analysis set, in the same form and amount as check no. 5078. It reached Chase on October 9, 2026 and was stamped by its payment-processing unit on October 13, 2026. By letter dated October 15, 2026, Chase returned it: "We

can't accept the funds you sent us … They aren't enough to bring your account up to date and they need to be sent as certified funds, like a money order or cashiers check." The October 15 letter issued one day after Chase received the documents that made Plaintiff's loss mitigation application facially complete under 12 C.F.R. § 1024.41(c)(2)(iv), and while 12 C.F.R. § 1024.41(g), or in the alternative § 1024.41(f)(2), barred any sale. Regulation Z defines a "periodic payment" as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle," and provides that a payment "qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf." 12 C.F.R. § 1026.36(c)(1)(i). Regulation X lists as a covered error: "Failure to accept a payment that conforms to the

servicer's written requirements for the borrower to follow in making payments." 12 C.F.R. § 1024.35(b)(1).

40A. On August 9, 2026, Plaintiff wrote to Chase's Executive Office: "Section 1026.36(c)(1) requires a servicer to credit a periodic payment as of the date of receipt of payment. Tell them to stop returning my payment, or I will file an action in federal court." Chase did not answer. It accepted and applied the next two payments, August 14 and September. Then, by letter dated October 15, 2026, it returned check no. 5080 on the ground it had abandoned for two months — that the payment was "not enough to bring your account up to date." Chase credits a periodic payment when it chooses and returns it when it chooses. The regulation gives it no choice.

41. The arrearage Chase now forecloses on traces to the charges in Sections B and C and to Chase's refusal of the payments in this Section.

**E. Chase wrote that it would not schedule a sale during review, then disclosed one.**

42. Chase wrote to Plaintiff on June 29, 2026, over the signature of Relationship Manager Christina Le Blanc: "We need to receive the information listed below by 08-01-2026, so we can start our review of your mortgage assistance application.... When we receive all of your information, we won't refer your loan to foreclosure or schedule a foreclosure sale while we're reviewing your application. If a foreclosure sale has already been scheduled, we may not be able to stop it, due to court rules, court orders or the timing of the foreclosure sale."

43. The letter specified two items: the completed and signed Request for Mortgage Assistance form, and documents verifying income. Plaintiff delivered both on July 31, 2026, together with a MassMutual Explanation of Benefits and Bank of America deposit and payment records.

44. April Poliseno of Chase's Executive Office telephoned Plaintiff on August 4, 2026 and stated: "I did receive your correspondence confirming that the mortgage assistance packet was received. I did send that over to your relationship manager." She stated that Chase's response to Plaintiff's document requests was "currently being finalized" and would arrive "within the next week." She said nothing about any foreclosure sale.

45. On August 6, 2026, Chase issued a written response. That letter states: "A review for mortgage assistance was received on July 31, 2026, and is currently being reviewed," and that Chase "will not finalize a foreclosure sale of your home during a payment assistance review." The same letter discloses that Chase referred the Loan to active foreclosure on June 16, 2026 and that a sale date is scheduled for November 30, 2026.

46. Chase's letter of August 21, 2026, itemizing "Corporate Advance Costs," lists "Standard hourly attorney fee for foreclosure services assessed" at $750.00 on March 22, 2025, and "Cost for Trustee Sale Guarantee" at $1,807.20 on April 16, 2025. Those charges precede by fifteen and fourteen months, respectively, the June 16, 2026 date Chase gave Plaintiff as the referral to active foreclosure. The same letter lists a second $1,807.20 "Cost for Trustee Sale Guarantee" on July 16, 2026, and describes "Legal costs charged to the account during the foreclosure proceedings from March 22, 2025, to July 21, 2026." Chase's July 16, 2026 statement posts that second charge under the description "TITLE PREPARATION COSTS," and states: "The foreclosure process has started." Chase posted that charge while Plaintiff was assembling the application Chase had asked for on June 29, and twenty days before August 5, 2026, the date

Chase says it "temporarily suspended the foreclosure activity." Chase has not explained how foreclosure proceedings its own letter dates from March 22, 2025 began with a referral on June 16, 2026.

47. Chase has never disclosed the date on which it set the November 30, 2026 sale date, or who authorized it. Plaintiff has received no Notice of Trustee's Sale by certified mail or otherwise, and no notice of sale has been personally served on him. The only sale date in the record is November 30, 2026, disclosed in Chase's August 6, 2026 letter. The Mortgage is a mortgage with power of sale. It names no trustee, and no trustee's sale under the Small Tract Financing Act is authorized by it. ¶¶ 15–16. Mont. Code Ann. § 71-1-224 and Section 22 of the Mortgage require advertising and personal service of a notice of sale at least 30 days before the date fixed for the sale. If Defendants

proceed instead by trustee's sale, as Chase's two charges for a "Trustee Sale Guarantee" suggest, ¶ 46, Mont. Code Ann. § 71-1-315(1)(a) requires that "[a]t least 120 days before the date fixed for the trustee's sale, a copy of the recorded notice of sale must be mailed by certified mail" to the grantor. For a November 30, 2026 sale, that day was August 2, 2026.

48. Chase's August 6, 2026 acknowledgment states neither that the application is complete nor what documents remain outstanding. Section 1024.41(b)(2)(i)(B) requires a servicer to notify the borrower in writing "within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application" that the application is "either complete or incomplete," and, if incomplete, to "state the additional documents and information the borrower must submit." Chase received the application on Friday, July 31,

2026. The five days were Monday, August 3 through Friday, August 7, 2026.

49. Chase wrote again on September 2, 2026. That letter states Chase "temporarily suspended the foreclosure activity" on August 5, 2026, and directs Plaintiff to "contact the foreclosure attorney representing Chase with questions about the foreclosure status or any new foreclosure sale date." Chase has not withdrawn the November 30, 2026 sale date disclosed on August 6, 2026, has issued no Notice of Trustee's Sale superseding it, and has identified no new date.

50. Chase's August 21, 2026 letter offers a repayment option available only "If the loan is up to date": pay the current monthly payment plus a portion of the $1,858.68 corporate advance balance each month, and "the payment would go back to the regular monthly mortgage payment." Chase's

reinstatement quotes of August 17 and August 18, 2026 place the loan $32,363.50 and $37,907.97 past due. Chase offered a plan premised on a status it said the loan did not hold.

51. Chase's notice of incompleteness is dated Sunday, August 9, 2026, two days after the five-day period ended on Friday, August 7, 2026. It lists three items: an updated Request for Mortgage Assistance form, which Chase marked "Received, but we need additional information" and described with the statements "The document is not clear, is not complete or has been altered" and "The form is not signed or dated by everyone on the loan"; IRS Form 4506-C, marked "Not received"; and a "Proof of Benefit Statement," marked received but lacking "[t]he award letter for benefits," to be cured by "either a source document OR one month's proof of receipt." It set September 11, 2026 as the return date. For

two of the three items it directed Plaintiff to telephone Chase because "we have a question that requires your clarification." It omits the statement § 1024.41(b)(2)(i)(B) requires in every such notice: that the borrower "should consider contacting servicers of any other mortgage loans secured by the same property."

52. Plaintiff did not return the three items by September 11, 2026. Chase did not deny or close the application for that reason. Section 1024.41 fixes its protections by the date a complete application is received: "such determination shall be made as of the date a complete loss mitigation application is received." 12 C.F.R. § 1024.41(b)(3).

53. On October 14, 2026, Plaintiff submitted every item the August 9, 2026 notice named: the updated, signed, and dated Request for Mortgage Assistance form bearing the loan number; IRS Form 4506-C, signed and dated; and his

complete Bank of America statement, account ending 4226, for August 11 through September 9, 2026, showing the MassMutual disability benefit deposits of $13,944.30 on August 13 and September 9, 2026 and the Social Security deposit of $2,805.00 on August 19, 2026. He sent them as a sixteen-page package with a cover letter, by email at 8:36 p.m. Mountain Time to CHASE.MB.EXECUTIVE.OFFICE@chase.com, the Executive Office address assigned to this loan, with a copy to executive.office@chase.com, and by fax to 1-866-282-5682, the number the August 9 notice designates. Under § 1024.41(c)(2)(iv), an application "shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B)." The application became facially complete on October 14, 2026.

54. The interval between the September 11, 2026 return date and the October 14, 2026 submission has a cause. On September 11, 2026, Plaintiff went to the emergency room with a head injury that required stitches and a torn left bicep tendon, detached from the bone. The repair surgery was scheduled for September 21, 2026, canceled by the surgical center, and performed on September 28, 2026. Plaintiff's cover letter to Chase states these facts and asks Chase to identify by name any item it still considers outstanding.

55. At 9:06 p.m. Mountain Time on October 14, 2026, by email to CHASE.MB.EXECUTIVE.OFFICE@chase.com with a copy to executive.office@chase.com, Plaintiff asked Chase to update the application to reflect that the loan secured by his recreational vehicle had been paid off, removing an expense

of about $1,275 a month, and asked Chase about a $300,000 equity loan or a $1,200,000 refinance.

56. On October 22, 2026, at 3:11 p.m. Mountain Time, Chase sent Plaintiff, through DocuSign, a “Mortgage Assistance Request — Documents Needed.” The envelope contained a Request for Mortgage Assistance form and a cover letter for missing items. Plaintiff completed the form and returned it, with the full application package, through DocuSign on October 23, 2026, at 9:48 a.m. Mountain Time — within nineteen hours of receipt, as Chase’s own DocuSign completion notice records — thirty-eight days before November 30, 2026. Section 1024.41(c)(2)(iv) provides that when a servicer “later discovers that additional information or corrections to a previously submitted document are required to complete the application,” it “must promptly request the missing information or corrected documents and

treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it first became facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of this paragraph (c)." For purposes of § 1024.41(g), the application is complete as of October 14, 2026.

57. Plaintiff signed the Request for Mortgage Assistance page and IRS Form 4506-C that he sent on October 14, 2026 by electronic signature, which he authorized and adopts as his own. Chase itself sent Plaintiff its October 22, 2026 forms through DocuSign for electronic signature.

58. Section 1024.41(c)(3)(i) requires a servicer, within five business days after receiving a complete application, to send a written notice that the application is complete, the date it was received, and, where the first notice or filing has been made, "that the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application." Plaintiff's application was complete on October 14, 2026; five business days later was October 21, 2026. Chase's own records fix the latest possible date: its DocuSign system recorded the package complete at 9:48 a.m. Mountain Time on October 23, 2026, and Chase's notice of October 25, 2026 states, "All parties have completed Mortgage Assistance Request — Documents Needed." Five business days after October 23 is October 30, 2026. Section 1024.41(c)(1) requires Chase to evaluate Plaintiff for all available options and send a written determination within 30 days of receiving

the complete application — by November 13, 2026 on Plaintiff's date, and by November 22, 2026 on Chase's. Chase has sent neither the completeness notice nor any determination. Chase's August 9 notice conditioned two of its three requests on a telephone conversation, yet Christina Le Blanc, whom Chase's letters of August 6 and September 2, 2026 name as Plaintiff's "single point of contact," has never telephoned Plaintiff, and the form Chase enclosed promises that on receipt "a team of dedicated specialists" will "call you within five business days." No one has called. Section 1024.41(b)(1) obligates a servicer to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Chase cannot route completion through a call it never makes.

59. Chase made its first filing on October 9, 2026, when it filed a complaint for judicial foreclosure in the Montana Twenty-

First Judicial District Court, Ravalli County, No. DV-41-2026-0000438-FO. Section 1024.41(g) provides that if a borrower submits a complete loss mitigation application after the first notice or filing "but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale," unless one of three events has occurred: a written determination that the borrower is not eligible for any loss mitigation option and the appeal process has run; the borrower's rejection of all offered options; or the borrower's failure to perform under an agreement. Chase received the complete application on October 14, 2026 — forty-seven days before November 30, 2026 — and on its own completion date of October 23, thirty-eight days before it. None of the three events has occurred: Chase has sent no written determination, Plaintiff has rejected no offered option, and

no loss mitigation agreement exists. Chase and its counsel may not move for a foreclosure judgment, move for an order of sale, or conduct a sale in No. DV-41-2026-0000438-FO while that bar stands.

60. The October 9 filing itself broke Chase's word and the regulation's purpose. On June 29, 2026, Chase wrote: "When we receive all of your information, we won't refer your loan to foreclosure or schedule a foreclosure sale while we're reviewing your application." Chase received Plaintiff's application on July 31, 2026, acknowledged it on August 4 and August 6, and was still reviewing it — it sent Plaintiff the forms to sign on October 22 — when it filed suit on October 9. Section 1024.41(f)(2) bars a servicer from making the first notice or filing where a complete application precedes it; section 1024.41(b)(1) required Chase to exercise reasonable diligence to complete the application it had.

Chase did neither. It sued first and sent the paperwork thirteen days later.

61. Section 1024.41(i) provides: "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." Chase evaluated a prior complete application from Plaintiff. Chase's own payment history posts each installment due January 1 through September 1, 2025 as a full "PAYMENT." ¶ 38. Plaintiff therefore has not been delinquent at all times since the prior application. Chase has not invoked § 1024.41(i). Its August 9 notice and its October 22 request treat the July 31 application as one under review.

**F. Chase refused the accommodation tied to the harm.**

62. Plaintiff asked Chase to telephone him if his homeowners insurance expired. His documented impairment lies in acute working memory and processing speed, not in reading. A mailed notice does not fail Plaintiff at the reading step; it fails at the retention step, where the deadline must be held in mind and acted upon.

63. Chase refused by letter dated June 1, 2026: "We understand your request to be contacted by phone if your homeowners insurance expires. However, our standard process is to send notifications by mail when we receive notice that your policy has expired. We are not able to make exceptions to this procedure. You will continue to receive these notices by mail to ensure consistent and timely communication."

64. Chase reviewed the request again and refused again. Its August 6, 2026 letter, under the heading "Accommodation

Requests," offers only an audio compact disc of written letters and a telephone line to have written communications explained. Neither addresses notice of insurance expiration.

65. The accommodation addresses the harm this record shows. Chase's own history runs the lapse from May 2024 to a doubled payment demand in November 2025: eighteen months of mailed notices that never registered with a borrower whose documented impairment is retention, not reading. One telephone call at the first lapse would have prevented every premium, every escrow analysis, and every suspended payment that followed. Chase refused the request with that history in its own records, and offered in its place an audio recording of the mail Plaintiff could not act on.

### G. Chase furnished inaccurate information to consumer reporting agencies.

66. Chase reported the Loan delinquent to Equifax, Experian, and TransUnion for months in which Plaintiff's payment cleared, including November 2025 through July 2026.

67. Plaintiff disputed the reporting with all three agencies. Experian opened the disputes on August 2, 2026 and forwarded them to Chase. Chase therefore received notice of the disputes under 15 U.S.C. § 1681i(a)(2) and owes the investigation duties of 15 U.S.C. § 1681s-2(b).

### H. Irreparable harm.

68. The Property is Plaintiff's residence and the site of a bison sanctuary housing thirty American bison and other animals in Plaintiff's care. No award of money restores it.

69. Plaintiff's monthly disability income from MassMutual and Social Security exceeds three times the $5,544.47 monthly

payment Chase's June 11, 2026 escrow analysis set. More than half of that income goes each month to the expenses of the sanctuary and of Bela, including feed for the herd, because the Iowa orders described in paragraphs 172 through 174 have left the nonprofit without access to its own funds. Plaintiff has paid, and can continue to pay, the $5,544.47 monthly payment.

70. Plaintiff's equity dwarfs the arrearage. Chase quoted reinstatement at $37,907.97 against unpaid principal of $883,529.19 on a property Chase's own Closing Disclosure appraised at $3,800,000.00 in July 2020. Chase's own lender-placed carrier set dwelling coverage at $2,746,089. Chase's security sits fully protected; Plaintiff faces irreversible loss.

## I. Chase sued first and sent the forms later.

70A. On October 9, 2026, Chase, through Halliday, Watkins & Mann, P.C. (Lewis N. Stoddard, HWM File No. MT22788),

filed a Complaint for Judicial Foreclosure in the Montana Twenty-First Judicial District Court, Ravalli County, No. DV-41-2026-0000438-FO, against Bela Animal Legal Defense and Rescue, Plaintiff, Big Sky Kubota, Thomas and Aynsley Starbuck, Ta-Kuan Yang, and unknown parties. The complaint seeks a decree of foreclosure, a writ of special execution, and a sheriff's sale of the Property. It states the amounts due "as of October 20, 2026" as principal $881,593.16, interest $18,986.71, escrow advances $18,013.85, late charges $221.05, suspense ($3,021.64), and advances $1,858.68, and pleads that the loan is "in default with the payment due on February 1, 2026 and each month thereafter." Compl. ¶¶ 14–15. The arrears Chase itself pleads — interest, escrow advances, late charges, and advances, less suspense — total $36,058.65. The escrow

advances and late charges are the charges described in Sections B through D.

70B. Thirteen days after filing suit, on October 22, 2026 at 3:11 p.m. Mountain Time, Chase sent Plaintiff through DocuSign a "Mortgage Assistance Request — Documents Needed," which Chase's email describes as "your DocuSign application acknowledgement letter to complete the necessary documents." Plaintiff completed and returned it at 9:48 a.m. on October 23, 2026. On October 25, 2026 at 5:14 a.m., Chase's DocuSign notice confirmed: "All parties have completed Mortgage Assistance Request — Documents Needed." Chase had Plaintiff's October 14, 2026 email, sent at 8:36 p.m. and resent at 9:06 p.m. Mountain Time to its Executive Office (Case ECW260114-00227-R4), reporting the September 11 head injury, the stitches, the torn bicep tendon, the canceled and rescheduled surgery, and asking

fourteen days for anything still missing. Chase sent the acknowledgment package and had Plaintiff served with that email in its file.

70C. On October 28, 2026, a process server delivered to Plaintiff at the Property two summonses and copies of the complaint, one addressed to Plaintiff and one addressed to Bela, each with the Note and Mortgage attached. The summons gives twenty-one days to answer. Chase's complaint names Ta-Kuan Yang, who lent Plaintiff $85,000 secured by a subordinate deed of trust recorded May 16, 2025, and the Starbucks, whose April 21, 2022 judgment lien Chase lists as a junior interest. Compl. ¶¶ 4, 6.

70D. Chase did not tell Plaintiff it had sued. Its October 15, 2026 letter refusing check No. 5080 does not mention the suit. Its October 22 DocuSign package does not mention it. Its single

point of contact did not call. Plaintiff learned of the suit when the process server handed it to him.

**J. The Iowa cloud on title drove the default.**

70E. Plaintiff bought the Property in July 2020 with money that was exempt from any creditor — proceeds of his disability benefits — for the use of the rescue he founded. On July 14, 2020, he quitclaimed the Property to Bela. The deed was recorded in Ravalli County on December 3, 2024. No judgment of any kind existed against Plaintiff on July 14, 2020; the first defamation verdict came June 8, 2021, and the Court of Appeals vacated it on February 22, 2023. A transfer of exempt-source property takes nothing from a creditor, because the creditor could never have reached the money. Plaintiff remains personally liable on the Note.

70F. On April 21, 2022, the Starbucks' Iowa counsel caused the Iowa defamation judgment to be recorded as a lien against

the Property in Ravalli County as Instrument No. 774963. Chase's own foreclosure complaint identifies that recording. Compl. ¶ 6. The Iowa Court of Appeals vacated that judgment on February 22, 2023. Starbuck v. McCleary, No. 21-1900 (Iowa Ct. App. Feb. 22, 2023). The lien stayed on the record. The Ravalli County Clerk of District Court confirmed in writing on May 1, 2023 that the Court of Appeals decision had never been filed with the Montana court, and on November 27, 2024 — twenty-one months after the vacatur — that the $8,000,000 judgment remained an active lien against the Property.

70G. On September 24, 2024, Michael Kent, the Starbucks' Iowa counsel, wrote to Fay Ranches, the broker marketing the Property, that there was a "valid and enforceable judgment lien" on the Property. On November 17, 2024, two days before the defamation retrial, the broker terminated the

listing: “we have received notice from Michael Kent below that there is a valid and enforceable judgement lien on the property and we have also been subpoenaed.” LACL143177 D1485 (DeShore email, Nov. 17, 2024). No money judgment existed that day. The vacatur came February 22, 2023; the replacement judgment came December 2, 2024.

70H. The same cloud blocked a refinance. A lender will not refinance a property carrying a recorded $8,000,000 lien, and Plaintiff could not sell it to pay the loan down. At the same time the Polk County Clerk held $58,815.41 of Plaintiff’s money under contempt orders, and the Iowa plaintiffs held $12,828.03 of his Social Security disability benefits and the titles to seven vehicles. Paragraphs 174A through 174H describe the May 28, 2026 order that froze every asset of the record owner. A borrower who cannot sell, cannot refinance,

and cannot reach his own funds cannot cure a default his servicer inflates. That is the default Chase sued on.

70I. These facts are pleaded for causation and damages. The Iowa cloud explains why the sale that would have paid the loan did not close, why no refinance was possible, and why the escrow and insurance charges Chase added in 2025 and 2026 went uncured. Plaintiff does not ask this Court to review any Iowa ruling; the Iowa plaintiffs and their counsel are not parties to this action.

**COUNT I — RESPA AND REGULATION X (12 U.S.C. § 2605; 12 C.F.R. Part 1024; against Chase)**

71. Plaintiff realleges each preceding paragraph.

72. Chase violated 12 C.F.R. § 1024.37 by assessing lender-placed insurance charges without delivering the 45-day and 15-day notices; by assessing the $10,061.00 charge without the "reasonable basis" that § 1024.37(b) requires; and by

failing to cancel the force-placed policy and refund the overlapping premium within 15 days of receiving evidence of coverage, as § 1024.37(g) requires.

73. Chase violated 12 C.F.R. § 1024.17(c)(7) by projecting a 2026 property tax disbursement it knew it would not make, and by collecting on the resulting shortage.

74. Chase violated 12 C.F.R. § 1024.41(b)(2)(i)(B) by failing to notify Plaintiff by Friday, August 7, 2026, the fifth business day after it received his application, whether the application was complete or incomplete; by dating that notice Sunday, August 9, 2026; and by omitting from it the statement the regulation requires concerning other servicers.

75. Chase violated 12 C.F.R. § 1024.41(f)(2) and (b)(1) when it made the first filing required by Montana law — the October 9, 2026 complaint for judicial foreclosure, No. DV-41-2026-0000438-FO — while Plaintiff's July 31, 2026 application

was under review and before completing it. Chase will violate § 1024.41(g) if it moves for a foreclosure judgment or order of sale in that action, or conducts the November 30, 2026 sale or any other sale, before one of the events in § 1024.41(g)(1)–(3) occurs.

76. Chase declined to produce documents Plaintiff requested, calling them “unavailable or non-public proprietary information,” without identifying the documents withheld or the ground for each. A servicer that answers that information is unavailable must have conducted “a reasonable search” and must provide “the basis for the servicer’s determination.” 12 C.F.R. § 1024.36(d)(1)(ii). A servicer that declines on a ground in § 1024.36(f)(1) must send a notice that “shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.” 12 C.F.R. § 1024.36(f)(2). Chase did neither.

77. Plaintiff seeks actual damages, additional damages of up to $2,000 for a pattern or practice of noncompliance, and costs. 12 U.S.C. § 2605(f)(1), (f)(3).

**COUNT II — FCRA FURNISHER LIABILITY (15 U.S.C. § 1681s-2(b); against Chase)**

78. Plaintiff realleges each preceding paragraph.

79. Upon receiving notice of Plaintiff's disputes from the consumer reporting agencies, Chase owed a duty to conduct a reasonable investigation, to review all relevant information, and to correct or delete information it could not verify.

80. Plaintiff disputed Chase's reporting with Equifax. Equifax completed its investigation and issued results dated August 10, 2026, under a confirmation number ending 4714, on the tradeline reported by JPMCB — Home Lending, account ending 1029. Equifax states that when it received the

dispute it "contacted the company reporting the disputed information to Equifax" and "requested that the reporting company verify the accuracy of the information you disputed." Chase therefore received notice of the dispute from a consumer reporting agency, and its duty under 15 U.S.C. § 1681s-2(b) attached.

81. When the dispute was received, Chase was reporting an Amount Past Due of $24,635, a payment history showing June 2026 as 120 days past due, and narrative code 263 (150 Days Past Due).

82. Equifax reported the outcome: "Our investigation concluded that the disputed information should be updated." Chase updated the tradeline and made every disputed figure worse. After the investigation Chase reported an Amount Past Due of $32,362 (up from $24,635), a balance of $904,007 (up from

$899,740), an Actual Payment Amount of $0, July 2026 newly added as 150 days past due, and narrative code 264.

83. Chase also reported a Date of Last Payment of 05/11/2026. Plaintiff's Bank of America records show fourteen consecutive automatic payments of $5,521.62 from June 2025 through July 2026, each marked Paid. Chase's own letters, quoted above, acknowledge receiving payments it then combined, suspended, or returned.

84. That Chase alone reaffirmed is not explained by any general practice of the reporting agency. In a separate dispute Plaintiff filed at the same time, Equifax completed its investigation on August 14, 2026, under a confirmation number ending 3991, and removed the disputed Credit Control, LLC collection account from Plaintiff's credit report. Equifax removed the item that could not be verified. Chase

verified the item it could not support, and reported it worse than before.

85. A furnisher that responds to a § 1681s-2(b) notice by increasing the reported delinquency, adding a new past-due month, and reporting that the consumer paid $0 has not conducted a reasonable investigation. Chase's own letters establish the escrow error, the payment applications, and the returned checks. A reasonable investigation reaches those records.

86. Plaintiff seeks actual damages, statutory and punitive damages, and costs under 15 U.S.C. §§ 1681n and 1681o.

## COUNT III — FAIR HOUSING ACT (42 U.S.C. §§ 3604(f), 3605, 3613; against Chase)

87. Plaintiff realleges each preceding paragraph.

88. Plaintiff has a handicap within the meaning of 42 U.S.C. § 3602(h): "a physical or mental impairment which

substantially limits one or more of such person's major life activities." His TBI substantially limits major life activities including concentrating, thinking, and remembering.

89. Chase knew of the disability. Plaintiff informed Chase in writing, and Chase holds documentation of Plaintiff's total-disability benefit and Social Security Disability Insurance income.

90. Mortgage servicing is the provision of "services or facilities in connection with such dwelling" under 42 U.S.C. § 3604(f)(2) and part of a "residential real estate-related transaction" under 42 U.S.C. § 3605.

91. Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The requested accommodation, a

telephone or text notification before an insurance lapse, was necessary to afford Plaintiff that opportunity. A borrower who reads a notice but cannot reliably retain and act on it stands in the position of a borrower who never received it.

92. The accommodation was reasonable. It required Chase to add one telephone call to an existing notification workflow. It imposed no fundamental alteration and no undue burden.

93. Chase refused, categorically and without individualized assessment: “We are not able to make exceptions to this procedure.” Chase refused a second time on August 6, 2026 by offering accommodations that address comprehension rather than retention.

94. Chase’s refusal, and the foreclosure that followed, inflicted severe emotional distress on Plaintiff. Plaintiff lives with a documented TBI. Chase wrote to Plaintiff that it would not schedule a sale during review, then disclosed one, while

Plaintiff cared for thirty bison on the Property and while an Iowa court held $58,815.41 of his money. ¶ 174.

95. Chase acted with reckless indifference to Plaintiff's federally protected rights. Chase applied a blanket policy, "We are not able to make exceptions to this procedure," without any individualized assessment, reviewed the request a second time, and refused again.

96. Section 3613(c)(1) authorizes actual and punitive damages and injunctive relief. The statute sets no cap on either. Plaintiff seeks those remedies and his costs under § 3613(c)(2).

## COUNT IV — BREACH OF CONTRACT AND OF THE IMPLIED COVENANT (Montana law; against Chase)

97. Plaintiff realleges each preceding paragraph.

98. The Note and the Mortgage obligate Chase to accept and apply conforming payments and to maintain the escrow account in accordance with their terms and applicable law.

99. Chase breached by charging premiums and escrow amounts it had no right to charge, by refusing payments that equaled or exceeded the amounts Chase billed, and by applying two payments to satisfy one inflated installment.

100. Chase breached the implied covenant of good faith and fair dealing by exercising its servicing discretion to create a delinquency and then invoking that delinquency to accelerate and foreclose.

**COUNT V — PROMISSORY ESTOPPEL (Montana law; against Chase)**

101. Plaintiff realleges each preceding paragraph.

102. Chase wrote on June 29, 2026 that when it received all of Plaintiff's information it would not "refer your loan to

foreclosure or schedule a foreclosure sale while we're reviewing your application." The letter added: "If a foreclosure sale has already been scheduled, we may not be able to stop it, due to court rules, court orders or the timing of the foreclosure sale."

103. The qualifier reserves only what court rules, court orders, or the timing of a sale prevent. No court rule or court order governs this sale under the power of sale. The Mortgage lets Chase postpone the sale "by public announcement." ¶ 17. The sale is more than a month away.

104. Chase set the deadline. Plaintiff met it. Chase foresaw and intended that reliance.

105. Plaintiff relied to his detriment. He assembled and delivered the application by Chase's deadline rather than pursuing other avenues to protect the Property during that window.

106. Chase disclosed on August 6, 2026 a sale for November 30, 2026 and has not withdrawn it.

**COUNT VI — MONTANA CONSUMER PROTECTION ACT**

**(Mont. Code Ann. §§ 30-14-103, 30-14-133; against Chase)**

107. Plaintiff realleges each preceding paragraph.

108. Chase provides services in trade and commerce in Montana. Plaintiff is a consumer of those services.

109. Chase engaged in unfair and deceptive acts and practices by charging for insurance without the required notices, by charging $10,061.00 for a policy its carrier issued after the period it purported to cover had ended, by withholding a $17,491.00 refund for 210 days while billing a monthly payment built on the unrefunded premium, by escrowing for a tax it knew Montana had exempted, by refusing payments that exceeded the amounts it billed, and by writing that it

would not schedule a sale during review and then disclosing one.

110. Plaintiff suffered an ascertainable loss of money as a result. For purposes of this Count only, Plaintiff limits his claimed actual damages to the sums Chase wrongfully charged, refused, suspended, and assessed as fees. He does not include within this Count the value of the Property, emotional distress damages, or any damages sought under the other Counts.

111. Section 30-14-133(1)(a) allows recovery of "money damages in the amount of any ascertainable loss of money or property or $500, whichever is greater," and permits the Court, in its discretion, to "award up to three times the money damages in the amount of any ascertainable loss of money or property sustained, if actual damages do not exceed $100,000." Section 30-14-133(3) provides: "A person who brings an

action on the person's own behalf without an attorney may receive attorney fees at the judge's discretion." Plaintiff seeks those damages, his costs, and attorney fees under § 30-14-133(3).

**COUNT VII — NEGLIGENT MISREPRESENTATION AND BREACH OF THE DUTY OF DISCLOSURE (Montana law; against Chase)**

112. Plaintiff realleges each preceding paragraph.

113. Chase holds its servicing records. Plaintiff does not. One who speaks must say enough to keep his words from misleading the listener, and one who holds special knowledge of material facts the other party cannot reach owes a duty to disclose them.

114. Chase wrote to Plaintiff on June 29, 2026 that it would not refer the Loan to foreclosure or schedule a foreclosure sale while it reviewed his completed application. Chase told him

by telephone on August 4, 2026 that his packet had arrived and that its document response was "currently being finalized." Chase said nothing about a sale. On August 6, 2026 Chase disclosed a sale date of November 30, 2026 and a referral to active foreclosure dated June 16, 2026, thirteen days before the June 29 letter.

115. Chase supplied Plaintiff irreconcilable accounts of its lender-placed insurance: a January 14, 2026 letter fixing the uninsured period at May 3 to June 19, 2025 and the charge at $2,591.00; notices of February 2 and March 4, 2026 asserting no coverage from June 19 to December 19, 2025; and a June 1, 2026 letter describing the gap as May 3 to December 19, 2025 and its cost as $10,061, when Chase's own ledger shows $12,652.00 charged for that span. Chase told Plaintiff its escrow analysis projected $7,575.19 in

November 2026 property taxes on a parcel it knew carried a 100% exemption.

116. Plaintiff relied. He assembled and delivered the application by Chase's deadline rather than pursuing other measures to protect the Property during that window, and he continued paying $5,521.62 each month.

117. Chase's conduct caused Plaintiff severe emotional distress. Plaintiff lives with a documented TBI and cares for thirty American bison and other animals on the Property. The Property is his residence and the sanctuary he founded; his relationship to it runs to personal identity rather than to any purely economic interest. Chase wrote that it would not schedule a sale of that land during review, and then disclosed one, while an Iowa order barred the record owner from selling or transferring any property.

118. Plaintiff paid every month. Bank of America cleared $5,521.62 every month from June 2025 through July 2026, and for February, March, and April 2026 he paid $1,062.87 more than Chase billed. Plaintiff's distress arises from a servicer refusing payments he made, not from the ordinary anxiety of a borrower who stopped paying.

## COUNT VIII — FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §§ 1692e, 1692f; against Halliday, Watkins & Mann, P.C., and, in the alternative, Chase)

119. Plaintiff realleges each preceding paragraph.

120. Halliday regularly collects or attempts to collect debts and is a debt collector under 15 U.S.C. § 1692a(6). "[B]ut for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 139 S. Ct. 1029, 1038 (2019). The Court there confronted

"only steps required by state law" and did not decide "what other conduct (related to, but not required for, enforcement of a security interest) might transform a security-interest enforcer into a debt collector subject to the main coverage of the Act." *Id.* at 1040. Halliday went beyond the steps Mont. Code Ann. § 71-1-224 requires: it sent Plaintiff a written notice stating "Total amount of the debt now: $ 918,485.37." ¶ 12.

121. Halliday violated § 1692e, including § 1692e(2)(A), by falsely representing the character, amount, and legal status of the debt. The amount it stated rests on an arrearage Chase manufactured, and Chase reported "Paid since last statement $0.00" for months in which Plaintiff's payment cleared.

122. Halliday violated § 1692f, including § 1692f(1) and § 1692f(6), by attempting to collect amounts not authorized

by the Loan or permitted by law, and by threatening nonjudicial action to dispossess Plaintiff of the Property when no present right to sell existed: 12 C.F.R. § 1024.41(g), or in the alternative § 1024.41(f)(2), bars the sale, and the default is one Chase created. If Defendants proceed by trustee's sale, the notice Mont. Code Ann. § 71-1-315(1)(a) requires was never mailed to Plaintiff by certified mail. ¶ 47.

123. In the alternative, if Chase took assignment of or began servicing the Loan while it was in default, Chase is itself a debt collector under § 1692a(6) and is liable under §§ 1692e and 1692f for the same conduct.

124. Plaintiff seeks actual damages, additional damages of up to $1,000, and costs. 15 U.S.C. § 1692k(a).

**COUNT IX — EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. § 1691(a)(2); against Chase)**

125. Plaintiff realleges each preceding paragraph.

126. Chase is a creditor and Plaintiff is an applicant within the meaning of the Equal Credit Opportunity Act, including as an applicant for a change in the terms of an existing credit arrangement through his loss mitigation application. The Act forbids discrimination against an applicant, with respect to any aspect of a credit transaction, “because all or part of the applicant’s income derives from any public assistance program.” 15 U.S.C. § 1691(a)(2).

127. Part of Plaintiff’s income derives from Social Security Disability Insurance. Chase discriminated against Plaintiff with respect to the servicing, payment application, and loss mitigation of his credit because of that income: it refused and returned the conforming payments he made from it and manufactured a default.

128. Plaintiff seeks actual damages, punitive damages of not more than $10,000, equitable and declaratory relief, and

costs under 15 U.S.C. § 1691e. Plaintiff pleads this Count in the alternative to Count III to the extent 15 U.S.C. § 1691e(i) bars recovery under both for a violation based on the same transaction.

## COUNT X — TRUTH IN LENDING ACT AND REGULATION Z — PAYMENT CREDITING (12 C.F.R. § 1026.36(c); 15 U.S.C. § 1640; against Chase)

129. Plaintiff realleges each preceding paragraph.

130. The Loan is a closed-end consumer credit transaction secured by Plaintiff's principal dwelling. Regulation Z, 12 C.F.R. § 1026.36(c)(1)(i), required Chase to credit each periodic payment to the Loan as of the date of receipt.

131. Chase failed to credit the $5,521.62 periodic payments Plaintiff made as of their dates of receipt, held them in suspense, returned them, and assessed late charges and reported delinquency for months in which payment cleared.

On October 15, 2026, Chase returned Plaintiff's $5,544.47 October payment, the full periodic payment under its own June 11, 2026 analysis, on the stated ground that it was not enough to bring the account up to date, a ground § 1026.36(c)(1)(i) does not recognize. Chase further imposed late charges attributable solely to earlier late charges, contrary to 12 C.F.R. § 1026.36(c)(2).

132. Plaintiff seeks actual damages, statutory damages of not less than $400 or greater than $4,000, and costs. 15 U.S.C. § 1640(a)(1), (a)(2)(A)(iv).

## COUNT XI — DECLARATORY JUDGMENT: THE JUDICIAL FORECLOSURE FILED OCTOBER 9, 2026 VIOLATES 12 C.F.R. § 1024.41; ANY JUDGMENT OR SALE ON IT IS VOID; SALE UNDER THE POWER OF SALE; VOID TRUSTEE'S SALE IN THE ALTERNATIVE (12 C.F.R. § 1024.41(f), (g); 12 U.S.C. § 2605(f); Mont. Code Ann. §§ 71-1-222, 71-1-223, 71-1-224, 71-1-228, 71-1-315; Mortgage § 22; 28 U.S.C. §§ 2201–2202; against Chase and Halliday, Watkins & Mann, P.C.)

133. Plaintiff realleges each preceding paragraph.

134. "When a real estate mortgage confers a power of sale, either upon the mortgagee or any other person, to be executed after a breach of the obligation for which the mortgage is a security, either an action may be maintained under this part to foreclose or proceedings may be had under the provisions of the mortgage." Mont. Code Ann. § 71-1-223. The Mortgage

confers a power of sale on Chase over more than 40 acres. ¶¶ 15–17.

135. Real estate sold under a power of sale in a mortgage "shall be advertised for sale at least 30 days before the date fixed for such sale," and "notices of such sale must be served personally at least 30 days before the date fixed for such sale upon the occupant of the property so advertised for sale and upon the mortgagor if within the state of Montana and upon every person or persons having or claiming an interest of record in the real estate so advertised for sale who may be found within the state of Montana." Mont. Code Ann. § 71-1-224. Plaintiff is the occupant and the mortgagor. Bela holds record title. Both are in Montana. No notice of sale has been personally served on Plaintiff.

136. In the alternative, if Defendants proceed by trustee's sale under the Small Tract Financing Act, Mont. Code Ann. § 71-

1-315(1)(a) required that "[a]t least 120 days before the date fixed for the trustee's sale, a copy of the recorded notice of sale must be mailed by certified mail" to the grantor, which for a November 30, 2026 sale fell on August 2, 2026. Section 71-1-315(2) requires that affidavits of mailing, posting, and publication be recorded "[o]n or before the date of sale." No such certified-mail notice was served on Plaintiff. A trustee's sale that fails to comply strictly with these requirements is void ab initio.

137. "All of the rights, powers, and privileges concerning the redemption from sales of real estate applicable to the sales of real estate under foreclosure proceedings or sales under execution shall be granted and allowed to sales of real estate under and by virtue of the power of sale contained in any mortgage or deed of trust in this state," except sales under a

trust indenture as defined in the Small Tract Financing Act. Mont. Code Ann. § 71-1-228.

137A. On October 9, 2026, Chase filed No. DV-41-2026-0000438-FO under Mont. Code Ann. § 71-1-222 to foreclose the Mortgage by decree and sheriff's sale. Paragraphs 70A through 70D. A judicial foreclosure is "any judicial or non-judicial foreclosure process" within 12 C.F.R. § 1024.41(f) and (g). Chase filed it while Plaintiff's July 31, 2026 application was under review and after writing on June 29, 2026 that it would not refer the loan to foreclosure during review. Chase received the complete application on October 14, 2026, and by its own records on October 23, 2026, more than 37 days before any sale. Section 1024.41(g) bars Chase and Halliday from moving for a foreclosure judgment, moving for an order of sale, or conducting a sale while that application is pending

and until one of the three events in § 1024.41(g)(1)–(3) occurs. None has.

137B. A foreclosure judgment or sale obtained in violation of § 1024.41(g) is obtained without a present right to it. Plaintiff seeks a declaration that Chase and Halliday may not move for judgment or an order of sale, or conduct a sheriff's sale, in No. DV-41-2026-0000438-FO while § 1024.41(g) bars it, and that any judgment, order of sale, or sale obtained while the bar stands is void as against Plaintiff and the Property. Plaintiff seeks this declaration against Chase and Halliday as parties bound by federal law, not an injunction directed to the Montana state court. 28 U.S.C. § 2283 is not implicated by a declaration of the parties' federal obligations, and 12 U.S.C. § 2605(f) supplies the damages remedy for each violation.

137C. In the alternative, if Chase proceeds under the power of sale rather than the judicial action, the paragraphs that follow govern that sale.

138. Chase has set a sale for November 30, 2026, and Halliday is "conducting a foreclosure sale" of the Property. Whether and on what terms that sale may proceed is an actual controversy between Plaintiff and these Defendants.

139. Plaintiff seeks a declaration under 28 U.S.C. § 2201 that (a) Chase and Halliday may not move for a foreclosure judgment or order of sale, or conduct a sale, in No. DV-41-2026-0000438-FO while 12 C.F.R. § 1024.41(g) bars it, and any judgment, order of sale, or sale obtained while the bar stands is void as against Plaintiff and the Property; (b) any sale of the Property under the power of sale may proceed only under the Mortgage and Mont. Code Ann. §§ 71-1-223 and 71-1-224, and not under the Small Tract Financing Act;

(c) no sale may proceed unless notice of sale has been advertised and personally served on Plaintiff and on Bela at least 30 days before the date fixed for the sale; (d) any sale is subject to the rights of redemption Mont. Code Ann. § 71-1-228 grants; (e) no sale may be conducted while 12 C.F.R. § 1024.41(g) or (f)(2) bars it; and (f) in the alternative, any trustee's sale of the Property conducted without the certified-mail notice Mont. Code Ann. § 71-1-315(1)(a) requires is void. Plaintiff seeks further relief under 28 U.S.C. § 2202, including an order that Chase and Halliday withdraw or stay their own prosecution of No. DV-41-2026-0000438-FO until Chase completes the evaluation § 1024.41(c) requires and the appeal period § 1024.41(h) provides has run.

## COUNT XII — FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692f(6) (against Halliday, Watkins & Mann, P.C.; pleaded in the alternative to Count VIII)

140. Plaintiff realleges each preceding paragraph.

141. Plaintiff pleads this Count under 15 U.S.C. § 1692f(6) alone. For purposes of § 1692f(6), the term debt collector "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). *Obduskey*, 139 S. Ct. at 1036. Halliday is such a person.

142. Section 1692f(6)(A) forbids "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."

143. Halliday is conducting a sale set for November 30, 2026 on a default Chase manufactured, after Chase wrote on June 29, 2026 that it would not "refer your loan to foreclosure or schedule a foreclosure sale while we're reviewing your application," and after Chase received a complete application that 12 C.F.R. § 1024.41(g) protects. No present right to sell exists while that regulation bars the sale. On October 9, 2026, Halliday also filed and now prosecutes the judicial foreclosure in No. DV-41-2026-0000438-FO, and on October 28, 2026 caused Plaintiff and Bela to be served, representing in the complaint that the loan was in default from February 1, 2026 "and each month thereafter" — the months in which Chase refused, returned, and suspended Plaintiff's payments. Sections D and I. Filing and serving a foreclosure complaint that pleads a manufactured default, while a complete loss mitigation application is pending, is a false

representation of the character, amount, and legal status of the debt under § 1692e(2)(A) and an unfair means of collection under § 1692f.

144. Nothing in Mont. Code Ann. § 71-1-224 required Halliday to proceed toward a sale during a pending loss mitigation review.

145. Plaintiff seeks actual damages, additional damages, and costs under 15 U.S.C. § 1692k(a).

**COUNT XIII — BREACH OF THE MORTGAGE: RIGHT TO REINSTATE (Mortgage § 19; Montana law; against Chase)**

146. Plaintiff realleges each preceding paragraph.

147. Section 19 of the Mortgage gives Plaintiff the right to have enforcement discontinued "at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument." ¶ 19.

For a sale on November 30, 2026, that right runs to November 25, 2026.

148. Chase issued a reinstatement quote on August 17, 2026 stating that $32,363.50 is "good through 08-28-26," and one on August 18, 2026 stating $37,907.97 "good through 09-17-26." Chase's July 31, 2026 quote states: "this letter doesn't extend or change the sale date." Chase has stated no reinstatement figure good through November 25, 2026.

149. The restriction matters. The Clerk of the Iowa District Court for Polk County holds $58,815.41 of Plaintiff's money; $12,828.03 in Social Security disability benefits was transferred out of his account, though 42 U.S.C. § 407(a) exempts such benefits from "execution, levy, attachment, garnishment, or other legal process"; and a May 28, 2026 Polk County order enjoins Bela, the record owner, from "selling, transferring, or otherwise dissipating any property

in its possession." A reinstatement figure that expires months before the date the Mortgage fixes leaves Plaintiff no time to assemble a cure. Compressing the cure window is the difference between a cure and a sale.

150. In the alternative, if Defendants proceed by trustee's sale, Mont. Code Ann. § 71-1-312(1) permits the grantor to pay the amount then due and cure the default "at any time prior to the time fixed by the trustee for the trustee's sale if the power of sale is to be exercised," and § 71-1-312(2) provides that upon that payment "all prior proceedings had or instituted to foreclose the trust indenture must be canceled."

151. Plaintiff seeks a declaration that his Section 19 right to reinstate runs to five days before any sale, an order requiring Chase to state on request a reinstatement figure good through that date and to honor it, and damages for breach.

## COUNT XIV — DECLARATORY JUDGMENT AND FURTHER RELIEF: THE IOWA ORDERS DO NOT RESTRAIN THE SALE OR ENCUMBRANCE OF MONTANA LAND (28 U.S.C. §§ 2201–2202; Mont. Code Ann. §§ 70-1-107, 25-9-503; against Chase and Halliday, Watkins & Mann, P.C., and against Joseph Seidlin in his official capacity for declaratory relief only)

152. Plaintiff realleges each preceding paragraph.

153. This Count seeks a declaration of the effect of certain Iowa orders on the sale and encumbrance of the Property, and further relief against Chase and Halliday under 28 U.S.C. § 2202. Plaintiff does not ask this Court to review, reverse, or vacate any Iowa judgment or order, or to enjoin any Iowa court or proceeding. Judge Seidlin is named on this Count and on Count XV in his official capacity and for declaratory relief only.

154. The May 28, 2026 order in Case No. EQCE087175 enjoins Bela, the record owner of the Property, "from selling, transferring, or otherwise dissipating any property in its possession," including "all real and personal property owned by the corporation," "until Plaintiffs' judgment from LACL143177 is fully satisfied." ¶ 172. The judgment in LACL143177 is on appeal to the Iowa Supreme Court in No. 25-0733.

155. Chase's June 29, 2026 letter lists, among the ways to avoid foreclosure, a "Short Sale": "Sell the property for less than the balance remaining on your mortgage"; and a "Deed-in-Lieu of Foreclosure": "Transfer the ownership of the property to us." It also invites Plaintiff to "discuss reinstatement, which allows you to bring the account up to date by paying the total amount due in one lump sum payment."

156. A short sale requires the record owner to sell the Property. A deed in lieu requires the record owner to transfer it to Chase. A refinance or equity loan to fund a reinstatement or payoff requires the record owner to mortgage it. On October 14, 2026, Plaintiff asked Chase about a $300,000 equity loan or a $1,200,000 refinance. ¶ 55.

157. If the May 28 order reaches Montana land, it forbids each of those transactions. Plaintiff must then choose between letting Chase's sale proceed and completing an option Chase itself offers at the risk of contempt in Iowa. The Iowa District Court has already held Plaintiff in contempt in LACL143177, a sentence he purged by depositing $48,136.08 under order D0614. ¶ 174.

158. Plaintiff contends that the Iowa District Court lacks jurisdiction to enter or enforce orders restraining property while its judgment in LACL143177 is on appeal in No. 25-

0733, and that each day those orders are given effect on Montana land without any Montana proceeding is a continuing deprivation of his property without due process of law, in violation of the Fourteenth Amendment.

159. The Property lies in Ravalli County, Montana. "Real property within this state is governed by the law of this state, except where the title is in the United States." Mont. Code Ann. § 70-1-107.

160. "Orders commanding action or inaction have been denied enforcement in a sister State when they purported to accomplish an official act within the exclusive province of that other State or interfered with litigation over which the ordering State had no authority. Thus, a sister State's decree concerning land ownership in another State has been held ineffective to transfer title, … although such a decree may indeed preclusively adjudicate the rights and obligations

running between the parties to the foreign litigation." *Baker v. General Motors Corp.*, 522 U.S. 222, 235 (1998).

161. A foreign judgment filed in Montana "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state." Mont. Code Ann. § 25-9-503. The Iowa judgment creditors filed an Iowa judgment in the Montana Twenty-First Judicial District Court, Ravalli County, Cause No. DV-41-2021-0000236-FJ; the Second Amended Entry of Foreign Judgment in that cause was filed on December 18, 2024. No Montana court has ordered that the Property not be sold, transferred, or encumbered.

162. The question is live between Plaintiff and these Defendants. Chase offers a short sale, a deed in lieu, and reinstatement as alternatives to the sale Halliday is conducting for it.

Whether the Iowa orders bar those alternatives decides whether Plaintiff and Chase can complete any of them before November 30, 2026, and on what terms any purchaser, lender, or title insurer will close. Chase's own June 29, 2026 letter states that Chase "may not be able to stop" a sale "due to court rules, court orders," among other reasons.

163. Plaintiff seeks a declaration that no Iowa order, including the May 28, 2026 order in EQCE087175, of its own force restrains the sale, transfer, or encumbrance of the Property, transfers title to it, or creates a lien on it as a matter of Montana law, and that any effect of an Iowa judgment on the Property depends on Montana law and Montana proceedings. Mont. Code Ann. §§ 70-1-107, 25-9-503.

164. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have

been determined by such judgment." 28 U.S.C. § 2202. Plaintiff seeks prospective relief against Chase and Halliday only: an order that they evaluate and act on any short sale, deed in lieu, reinstatement, payoff, or refinance of the Loan without treating the Iowa orders as a bar to it.

165. The Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The injury this Count addresses is Chase's sale and the loss of the alternatives to it, and the Count invites no review or rejection of any Iowa judgment. Plaintiff seeks no injunction "to stay proceedings in a State court." 28 U.S.C. § 2283.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

166. Plaintiff realleges each preceding paragraph and applies under Fed. R. Civ. P. 65.

167. Plaintiff is likely to succeed on the merits. Chase's own letters establish each element: the June 29, 2026 letter, the July 31, 2026 receipt Chase admits, the August 6, 2026 disclosure of a November 30, 2026 sale, the March 17, 2026 projection of a tax Chase knew was exempt, the May 4, 2026 call Chase admits, the irreconcilable lender-placed insurance accounts, the combined and suspended payments, and the returned checks.

168. Plaintiff will suffer irreparable harm absent relief. Real property is unique, and no damages award restores a residence sold at a foreclosure sale or the sanctuary operating on it.

169. The balance of equities favors Plaintiff. Chase's security exceeds its claim several times over, and Chase wrote that it "will not finalize a foreclosure sale of your home during a payment assistance review."

170. The public interest favors relief. Regulation X requires servicers to evaluate a complete loss mitigation application before proceeding to sale.

171. Plaintiff requests that any security under Fed. R. Civ. P. 65(c) be set at a nominal amount.

172. The record owner cannot sell the Property to cure the arrearage Chase claims. On May 28, 2026, the Iowa District Court for Polk County ordered in Case No. EQCE087175: "until Plaintiffs' judgment from LACL143177 is fully satisfied Defendant Bela Animal Legal Defense and Rescue is enjoined from selling, transferring, or otherwise dissipating any property in its possession. This includes all

real and personal property owned by the corporation, whether it has been identified in this suit or not." Title to the Property stands in Bela. That order, by its terms, forbids the sale or transfer that would satisfy Chase.

173. The same order dissolved the prior temporary injunctions and directed the Clerk to "return the associated posted bonds to Plaintiffs' counsel," then entered the injunction quoted above without requiring any bond. Plaintiff also has no access to approximately $58,000 of Bela's funds or to $12,828.03 in Social Security Disability Insurance benefits exempt from legal process under 42 U.S.C. § 407(a).

174. Plaintiff cannot post a substantial bond. The Iowa District Court for Polk County entered default against Plaintiff on June 10, 2026 in Case No. EQCE087175, denied his motion to vacate on June 19, 2026, denied his emergency motion to stay the damages prove-up and set aside the default on July

17, 2026, and denied his motion to reconsider on July 29, 2026. The Iowa Supreme Court refused his petition for writ of certiorari and denied his motion for stay on July 15, 2026 in No. 26-1224, after denying his petition for writ of mandamus on April 30, 2026 in No. 26-0749. The Clerk of the Iowa District Court for Polk County holds $58,815.41 of his money, $10,679.33 deposited under order D0404 and $48,136.08 under order D0614 in Case No. LACL143177, to purge a contempt sentence that order D0655 confirms he purged; that court denied his motion to return the funds. LACL143177 D1631, Order (June 19, 2026). A further $12,828.03 of his Social Security disability benefits was transferred from his bank account to opposing counsel's trust account under an order dated April 5, 2022, though 42 U.S.C. § 407(a) exempts those benefits from "execution, levy, attachment, garnishment, or other legal process," and his

written demands for their return in February and March 2026 were refused. The judgment those funds are held against rests on a defamation verdict as to which the Iowa court found, in its ruling on post-trial motions, that "[t]here was no evidence that both plaintiffs' reputations suffered any harm," that "[t]here was no evidence that anyone from the public told the Starbucks the defamatory statements existed," that "Thomas Starbuck testified he had never read the defamatory statements," that "[t]here was no testimony that any individual believed any of the statements," and that "neither plaintiff sought any medical treatment." LACL143177 D1565, Ruling at 9, 11 (Feb. 17, 2025). On those findings it remitted the punitive award as inconsistent with due process. Id. at 11–13. Thomas Starbuck testified at the June 7, 2021 trial that his own reaction was to "let it drop by its own weight," and that the lawsuit proceeded

because Mr. Kent "would like the permission to pursue it." Trial Tr. Vol. I at 103–04, LACL143177 (June 7, 2021). The Iowa plaintiffs rejected the remitted amounts and demanded a third trial on damages, D1580 at 1 ¶¶ 1, 4 (Apr. 23, 2025), and the judgment is on appeal in Iowa Supreme Court No. 25-0733. The funds are held against a judgment that has no fixed amount and no prejudice proven by the Iowa plaintiffs. Plaintiff's money sits in another court's hands; his collateral sits in Chase's.

### K. An Iowa judge inserted himself into Montana by enjoining Montana land.

174A. This case reaches a Montana courthouse because an Iowa judge reached into Montana first. On May 28, 2026, Judge Joseph Seidlin signed an order in Polk County No. EQCE087175 enjoining Bela — the record owner of the Property at 1763 Red Crow Road, Victor, Montana — "from

selling, transferring, or otherwise dissipating any property in its possession," expressly "includ[ing] all real and personal property owned by the corporation, whether it has been identified in this suit or not," "until Plaintiffs' judgment from LACL143177 is fully satisfied." A true copy of that order is attached as Exhibit A.

174B. The order was no accident of drafting. The application Judge Seidlin granted asked the Iowa court, in terms, to find "[t]hat Jaysen McCleary fraudulently transferred real property located at 1763 Red Crow Rd, Victor, MT 59875," and to authorize "levy of execution" upon and "transfer of title" of that property. Judge Seidlin granted the injunction. His order is the single instrument by which an Iowa proceeding now purports to freeze the sale, transfer, or encumbrance of Montana real estate.

174C. Judge Seidlin entered that injunction knowing it could not yet be justified. His own order states that the relief requested "inevitably must involve Mr. McCleary," that "a proper, full remedy cannot be determined until the liability of both defendants has been fully adjudicated," and that the court "reserves the right to grant further relief ... once Defendant Jaysen McCleary's liability in this matter has been fully adjudicated." He entered the property freeze anyway.

174D. He did it without security. The same order dissolved the prior temporary injunctions, directed the Clerk to "return the associated posted bonds to Plaintiffs' counsel," and then imposed the new, broader injunction with no bond behind it.

174E. The judgment the injunction exists to protect is itself contested and unfixed. It arises from the LACL143177 defamation verdict, which is on appeal to the Iowa Supreme

Court in No. 25-0733, which the trial court found rested on "no evidence that both plaintiffs' reputations suffered any harm," and on which the court remitted the punitive award as inconsistent with due process. The Iowa plaintiffs rejected the remitted figure and demanded a third trial. There is no final, fixed judgment — yet the May 28 order freezes Montana land until that moving target is "fully satisfied."

174F. The direct consequence is the controversy now before this Court. Chase offers Plaintiff a short sale, a deed in lieu, a reinstatement, and a refinance as ways to save the Property. Each requires the record owner to sell, transfer, or encumber Montana land. Judge Seidlin's order, if it has the force the Iowa plaintiffs ascribe to it, forbids every one of them — and does so from a courtroom roughly 1,200 miles outside Montana, with no Montana proceeding and no Montana court order behind it.

174G. The court has kept the freeze in force on a default it entered thirteen days later, after ignoring Plaintiff's request for time and then denying that he asked. Plaintiff moved for additional time to answer on April 16, 2026, in a filing whose title and Division XXIV both state the request; the court never ruled on it. On June 10, 2026, the court entered default against Plaintiff, reciting that "[a]t no point has he requested, nor has the Court granted, an extension on the time allowed to file an answer" — contradicted by the April 16 filing in the court's own record. The same June 10 order found that "[i]t is clear that McCleary intends to defend," yet defaulted him anyway. A property freeze reaching Montana land, kept in force on a default entered against a defendant the court found was actively defending and whose timely request for time the court first ignored and then denied

making, is not the product of a court exercising jurisdiction within due process. U.S. Const. amend. XIV.

174H. The record reflects a documented, extrajudicial pattern — not mere adverse rulings. A decade ago a Polk County attorney wrote the then-Chief Judge that "there is a concerted effort by some judges to rule against Mr. McCleary to the best of their ability." The judge who later acknowledged, on the record, having engaged in extrajudicial discussions concerning Plaintiff was subsequently appointed Chief Judge of the Fifth Judicial District — the district whose judges entered the orders reaching Plaintiff's Montana property. Plaintiff offers this not to relitigate any Iowa ruling, but as context for why the extraterritorial order on Montana land warrants this Court's independent examination of the jurisdiction behind it.

## COUNT XV — DECLARATORY JUDGMENT: THE MAY 28, 2026 INJUNCTION IS A NULLITY AS TO MONTANA LAND AND AS TO PLAINTIFF BECAUSE IT WAS ENTERED IN THE CLEAR ABSENCE OF ALL JURISDICTION; IN THE ALTERNATIVE, PROSPECTIVE RELIEF AGAINST ITS CONTINUING ENFORCEMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT (28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983; Ex parte Young; U.S. Const. amend. XIV; U.S. Const. art. IV, § 1; 42 U.S.C. § 407(a); Mont. Code Ann. §§ 70-1-107, 25-9-503; against Joseph Seidlin in his official capacity, and against Chase and Halliday, Watkins & Mann, P.C.)

175. Plaintiff realleges each preceding paragraph.

176. This Count asks first for a declaration that the May 28, 2026 order has no force of its own over the Property or over Plaintiff, because the Iowa court entered it in the clear

absence of all jurisdiction — over Montana land, over the real Bela nonprofit, and over Plaintiff — on each of the eight independent grounds itemized below. In the alternative, it asks for prospective relief to stop the continuing enforcement of that order against Montana land and a Montana resident in violation of the Due Process Clause. Plaintiff seeks no damages on this Count. The declaration runs to what the order can and cannot do as a matter of federal and Montana law.

**A. A court cannot reach land in another State.**

177. "A decree cannot operate beyond the state in which the jurisdiction is exercised. It is not in the power of one state to prescribe the mode by which real property shall be conveyed in another." Fall v. Eastin, 215 U.S. 1 (1909). Where a suit is strictly local — where the subject matter is specific property and the relief must act directly upon it — the jurisdiction

must be exercised in the state where the property is situated, and a foreign decree "is not of itself legal title, nor does it transfer the legal title." Id. A sister-State decree concerning land in another State has been held ineffective to transfer title. Baker v. General Motors Corp., 522 U.S. 222, 235 (1998). "Real property within this state is governed by the law of this state." Mont. Code Ann. § 70-1-107.

178. The May 28 order does what Fall v. Eastin forbids. From an Iowa courtroom it acts on the disposition of real property in Ravalli County, Montana, and the application it granted asked the Iowa court to order "transfer of title" of that Montana land. Fall leaves a court one path to out-of-state land: a decree that binds a party properly before it and compels that party to act. The Iowa court had no such party. The real Bela nonprofit was never served. The Iowa court itself found that the Starbucks "failed to comply with the

court's order on August 4, 2025, allowing for alternate service and giving them 30 days to complete service and file notice with the court." D0826 at 6 (Mar. 30, 2026). Plaintiff was never personally served in Montana. With no party before it and no power over the res, the Iowa court stood on neither footing Fall recognizes. As to the Property, the order is a nullity.

**B. The order was entered in the clear absence of all jurisdiction.**

179. A judicial act is protected even when erroneous or in excess of authority; the sole exception, and the reason Judge Seidlin is properly named for declaratory relief, is that a judge acts "in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349 (1978); Mireles v. Waco, 502 U.S. 9 (1991). The May 28 order was such an act. It reached Montana land an Iowa court cannot touch, and it bound a defendant and a res

over which the Iowa court never acquired jurisdiction, as set forth below.

**C. The Iowa court never acquired jurisdiction over Plaintiff, the entity, or the res — the itemized defects.**

180. Each of the following eight defects independently deprived the Iowa court of jurisdiction to enter the May 28 order against Plaintiff, the real Bela nonprofit, or the Property. Plaintiff has presented each of them to the Iowa Supreme Court in No. 25-0733 (Brief of Defendant-Appellee/Cross-Appellant, Argument III, at 114–135, filed July 29, 2026); he pleads them here not to obtain review of any Iowa ruling but because each one, standing alone, places the May 28 order outside any jurisdiction the Iowa court possessed:

(a) No original notice ever brought the real Bela nonprofit before the court. The only original notice named "Bela Animal Legal Defense and Rescue, LLC," an entity

that has never existed; the real party is Iowa chapter 504 nonprofit No. 505079, and Plaintiff was listed only as its registered agent. An original notice is the writing "issued by authority of law, for the purpose of bringing defendants into court." Wilson v. Ribbens, 678 N.W.2d 417, 420 (Iowa 2004). None issued to the nonprofit that exists, so it never came into court. L.F. Noll, Inc. v. Eviglo, 816 N.W.2d 391 (Iowa 2012). A substantial misnomer brings no one into court, and no amendment cures it. Smith v. Baule, 260 N.W.2d 850 (Iowa 1977); Hickman v. Hygrade Packing Co., 185 N.W.2d 801 (Iowa 1971). A person neither named nor served is not bound. Ryan v. Iowa Dist. Ct., 329 N.W.2d 658 (Iowa 1983). The Iowa court's own order finds that the Starbucks "failed to comply with the court's order on August 4, 2025, allowing for alternate service and

giving them 30 days to complete service and file notice with the court." D0826 at 6 (Mar. 30, 2026). The Starbucks concede that original notice "was not successfully served on either defendant." The petition itself pleads Plaintiff's Montana residence at 1763 Red Crow Rd., Victor, MT 59875. Fourth Am. Pet. ¶¶ 9, 67, 75, 78, 92. A court cannot adjudicate out-of-state title or reach a Montana resident without minimum contacts, Fall v. Eastin, 215 U.S. 1 (1909); Shaffer v. Heitner, 433 U.S. 186 (1977), and the fiduciary shield independently defeats personal jurisdiction over Plaintiff for acts taken for the nonprofit. State ex rel. Miller v. Internal Energy Mgmt. Corp., 324 N.W.2d 707, 711–12 (Iowa 1982). Iowa never acquired personal jurisdiction over Plaintiff or over the real nonprofit.

(b) Iowa law bars prejudgment attachment and restraint of property in a tort action, and the Starbucks held no creditor predicate. LACL143177 is a defamation case; the equity theory in EQCE087175 depends entirely on that tort verdict. Iowa has not recognized prejudgment attachment in tort. Raver v. Webster, 3 Iowa 502 (1856); Estate of Lyon v. Heemstra, 779 N.W.2d 494 (Iowa Ct. App. 2010). A transfer challenge belongs to a lien creditor, which ordinarily requires a judgment first. INNK Land & Cattle Co. v. Kenkel, 546 N.W.2d 585 (Iowa 1996); Somers v. Spaulding, 294 N.W. 610 (Iowa 1940). Freezing property without notice, hearing, bond, or judgment is a taking without due process. Sniadach v. Family Fin. Corp., 395 U.S. 337 (1969); Fuentes v. Shevin, 407 U.S. 67 (1972). An injunction freezing all of a defendant's property before any final

judgment is a prejudgment attachment in all but name.

(c) Without subject-matter jurisdiction the court had no discretion; it had to dismiss. "If the court lacks jurisdiction it cannot render a judgment but must enter an order dismissing the action." Lloyd v. State, 251 N.W.2d 551 (Iowa 1977). A court cannot create its own jurisdiction. Klinge v. Bentien, 725 N.W.2d 13 (Iowa 2006). A void judgment "is no judgment at all," and lapse of time is "no bar." Williamson v. Williamson, 179 Iowa 489 (1917). "Without jurisdiction, the court would have no authority to enter default." City of Des Moines v. Iowa Dist. Ct. for Polk Cnty., 428 N.W.2d 292 (Iowa 1988). The June 10, 2026 default and the May 28, 2026 order rest on a court that had no power to enter either.

(d) The injunction imposed the remedy before the liability Judge Seidlin himself declared necessary, and without the bond Iowa Rule of Civil Procedure 1.1508 requires. Without a valid judgment or lien, nothing was ripe. Berent v. City of Iowa City, 738 N.W.2d 193 (Iowa 2007). Rule 1.1508 makes a bond mandatory before property restraint. The May 28 order dissolved the prior bonded injunctions, directed that "the Clerk of Court shall return the associated posted bonds to Plaintiffs' counsel," and left Bela enjoined with no new bond — while acknowledging in the same order that a "proper, full remedy cannot be determined until the liability of both defendants has been fully adjudicated." The order concedes that full relief depended on liability, then imposes it in advance.

(e) The Starbucks proved no harm, so they had no standing to invoke this machinery at all. A transfer claimant must show it was prejudiced by the transfer. INNK, 546 N.W.2d 585; C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc., 412 N.W.2d 593, 597 (Iowa 1987) (creditors "must be able to show they would have received something which has become lost to them by reason of the conveyance"). The court that tried the defamation claim found no reputational harm, no evidence the public learned of the statements, and no testimony that anyone believed them. LACL143177 D1565 at 9, 11 (Feb. 17, 2025). No harm means no transfer prejudice, no standing, and no ripeness. Iowa Citizens for Cmty. Improvement v. State, 962 N.W.2d 780 (Iowa 2021). The judgment the injunction exists to

secure is on appeal in No. 25-0733, was remitted for want of proven harm, and has no fixed amount.

(f) Iowa Code section 684.9 extinguished the transfer claims that were not timely served. Section 684.9 extinguishes a transfer claim "not later than four years after the transfer was made"; extinguishment is repose, leaving an amendment nothing to relate back to. Iowa R. Civ. P. 1.402(5). The June 17, 2021 cash transfer was extinguished June 17, 2025; the January 12, 2022 title transfers, January 12, 2026. No valid service preceded either date, and a default does not revive an extinguished claim. The Iowa court had excused defective service by placing the limitations period at twenty years, D0826 at 6 n.29 (Mar. 30, 2026), then conceded the error five weeks later: "McCleary is correct that the court assessed the incorrect statute of

limitations for this action." Order, EQCE087175 (May 1, 2026), D0860.

(g) The contempt, the mittimus, and the no-bond warrant that coerced compliance with the Iowa orders are void for want of the personal service Iowa Code section 665.7 requires. "Before punishing for contempt," the offender "must be served personally with an order to show cause." Iowa Code § 665.7; Eagle Rise Devs., LLC v. Iowa Dist. Ct., No. 24-1331, slip op. at 2, 11–14 (Iowa June 19, 2026). Alternative service does not satisfy it. Id. at 12–13, 18–19. The show-cause order named only Bela; no personal service was made on Plaintiff. The court committed Plaintiff anyway: a 23-day mittimus (D1184; D1185 (Mar. 7–8, 2024)) and a no-bond arrest warrant (D1193 (Mar. 22, 2024)) on alternative service it had itself rejected on February 4, 2022 as

inconsistent with section 665.7. An order without personal jurisdiction is void. Dayton v. Patterson, 250 N.W. 595 (Iowa 1933). The $48,136.08 Plaintiff paid to purge that contempt sits in the Polk County clerk's hands under the same void machinery.

(h) Federal law places Plaintiff's exempt disability income beyond every creditor and every court. Section 407(a) of Title 42 bars subjecting Social Security benefits to "execution, levy, attachment, garnishment, or other legal process." Bennett v. Arkansas, 485 U.S. 395, 397–98 (1988) (per curiam). MassMutual disability-policy benefits are separately exempt. Iowa Code § 627.6. The April 5, 2022 condemnation sent $12,828.03 of Social Security disability benefits to the Kent Law Firm IOLTA account after Plaintiff told the court every penny was disability money, D0698 at 2; D0724, and

the Starbucks have since conceded that "funds received on the basis of federal disability/SSDI are exempt." D1546 ¶ 14 (Jan. 30, 2025). A court that takes exempt federal benefits acts without any jurisdiction Congress left it.

**D. The constitutional injury and the controversy.**

181. Each day the May 28 order is given effect on Montana land, without any Montana proceeding and without any Montana court order, is a continuing deprivation of Plaintiff's property without due process of law, in violation of the Fourteenth Amendment, and an overclaim of extraterritorial force that the Full Faith and Credit Clause does not supply. A foreign judgment filed in Montana "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state." Mont. Code Ann. § 25-9-503. No Montana

court has ordered that the Property not be sold, transferred, or encumbered. The deprivation is not historical. It is ongoing, it is enforced by the threat of the same contempt machinery described in paragraph 180(g), and it operates on Montana land and on a Montana resident every day the order is treated as binding here.

182. The controversy is live among Plaintiff, Chase, and Halliday because Chase conditions short sale, deed in lieu, reinstatement, and refinance on the record owner's freedom to deal with the Property, and the Iowa plaintiffs treat the May 28 order as forbidding exactly that. It is live as to Judge Seidlin in his official capacity because he is the signatory whose order is said to carry that extraterritorial force. Plaintiff recognizes that a judge who adjudicates a case is ordinarily not an adverse litigant for purposes of injunctive relief, Whole Woman's Health v. Jackson, 595 U.S. 30 (2021),

and for that reason seeks no injunction against Judge Seidlin on this Count. The declaration sought concerns the extraterritorial effect of an order on Montana land, a question the Iowa court has never decided and that only a Montana forum can answer for Montana title.

183. Plaintiff seeks a declaration under 28 U.S.C. § 2201 that: (a) the May 28, 2026 order in EQCE087175 is, of its own force, a nullity as to the Property and as to Plaintiff because it was entered in the clear absence of all jurisdiction, on each of the grounds stated in paragraph 180; (b) that order does not restrain the sale, transfer, or encumbrance of the Property, transfer title to it, or create a lien on it, as a matter of Montana law; and (c) any effect of an Iowa judgment on the Property depends on Montana law and a Montana proceeding. Plaintiff seeks no damages against Judge Seidlin. As to Chase and Halliday, Plaintiff seeks further

relief under 28 U.S.C. § 2202 that they evaluate and act on any short sale, deed in lieu, reinstatement, payoff, or refinance without treating the May 28 order as a bar.

**E. In the alternative: prospective relief against a continuing violation of federal law.**

184. In the alternative, if the Court concludes that the May 28, 2026 order was not entered in the clear absence of all jurisdiction, Plaintiff seeks prospective relief against Judge Seidlin in his official capacity under Ex parte Young, 209 U.S. 123 (1908), to halt a continuing violation of federal law. The violation is the present and ongoing enforcement, against Montana land and against a Montana resident, of an order entered without original notice on the real defendant, without personal jurisdiction over Plaintiff, without the bond state law requires, before any adjudication of liability, in a tort action in which Iowa law permits no prejudgment

restraint, and in aid of a judgment on exempt federal benefits that 42 U.S.C. § 407(a) places beyond legal process. Each day that enforcement continues is a fresh deprivation of property without due process of law under the Fourteenth Amendment. Plaintiff pleads this alternative with the limits of Whole Woman's Health v. Jackson, 595 U.S. 30 (2021), in view: the May 28 order is not a ruling in a case between other parties that Judge Seidlin merely adjudicated; it is an injunction, running until further order of the same judge, that he enforces through contempt against the record owner of Montana land. In enforcing it he acts as the party restraining the Property, not as a neutral adjudicator of someone else's claim.

185. The prospective relief sought is a declaration that the continued enforcement of the May 28, 2026 order against the Property and against Plaintiff violates the Due Process

Clause of the Fourteenth Amendment and exceeds any force the Full Faith and Credit Clause supplies, and, consistent with 42 U.S.C. § 1983, injunctive relief against Judge Seidlin in his official capacity only if that declaratory decree is violated or declaratory relief is unavailable. Plaintiff seeks no damages against Judge Seidlin on this or any Count.

186. This alternative relief does not ask the Court to review or reject an Iowa judgment. No final judgment exists in EQCE087175; the May 28 order is interlocutory, the prove-up is set for December 14, 2026, and the judgment the order exists to secure is on appeal in No. 25-0733. The injury pleaded is the continuing extraterritorial enforcement of an interlocutory order against Montana property and a Montana resident, not the order's entry, and the relief runs prospectively only. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).

## COUNT XVI — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Montana law; against Chase and Halliday, Watkins & Mann, P.C.)

187. Plaintiff realleges each preceding paragraph.

188. Montana recognizes intentional infliction of emotional distress as an independent cause of action. A plaintiff recovers on proof that the defendant intentionally or recklessly caused serious or severe emotional distress, and that the distress was the reasonably foreseeable consequence of the defendant's act. Sacco v. High Country Indep. Press, Inc., 271 Mont. 209, 896 P.2d 411 (1995). "The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." Id. (quoting Restatement (Second) of Torts § 46 cmt. j).

189. Chase and Halliday knew what they were doing to whom. Chase's own file records Plaintiff's traumatic brain injury

and his accommodation requests. Paragraph 10 and Section F. Chase had his October 14, 2026 email reporting a head injury requiring stitches, a torn bicep tendon, and surgery canceled and rescheduled. Paragraph 70B. Chase had told him in writing on June 29, 2026 that it would not refer the loan to foreclosure during review. It took his payments for fourteen months and sent them back. It refused check No. 5080 on October 15, 2026. With all of that in hand, it sued on October 9, 2026 without telling him, sent him the application forms on October 22, let him complete them on October 23, confirmed completion on October 25, and had him served on October 28 with a complaint that also named the friend who lent him $85,000 and the Iowa plaintiffs who have pursued him for a decade.

190. That sequence was intended to, or recklessly disregarded that it would, inflict severe distress on a disabled borrower

who had done everything the servicer asked. Its effect was severe. Since the October 28 service Plaintiff has been unable to sleep or to work, and on October 28, 2026 he began passing blood, which he photographed. The distress is the reasonably foreseeable result of serving a foreclosure suit on a borrower with a documented brain injury, three days after confirming his loss mitigation application complete, over a default the servicer built. No reasonable person could be expected to endure it.

191. Plaintiff seeks compensatory damages for emotional distress and its physical manifestations, and punitive damages under Mont. Code Ann. §§ 27-1-220 and 27-1-221 on proof of actual malice, as Sacco permits when intentional infliction is pled.

## PRAYER FOR RELIEF

Plaintiff requests that the Court:

a. Enter a temporary restraining order and preliminary injunction barring Chase and Halliday, Watkins & Mann, P.C., and their agents, from conducting, continuing, or re-noticing any foreclosure sale of the Property under the power of sale, and from recording, mailing, publishing, posting, or serving any notice of sale or notice of trustee's sale, pending resolution of this action;

b. Order Chase to re-run the escrow analysis from March 17, 2026 forward without any projected 2026 property tax disbursement and to credit the difference;

c. Order Chase to reverse every lender-placed insurance charge for which it cannot prove delivery of the notices required by 12 C.F.R. § 1024.37;

d. Order Chase to credit each $5,521.62 payment, and the $5,544.47 October 2026 payment, as of its date of receipt,

release all suspense balances, and reverse every late charge assessed on a month in which payment cleared;

e. Order Chase to evaluate Plaintiff for a payment deferral placing the claimed arrearage in a non-interest-bearing balance due at payoff or maturity;

f. Order Chase to correct its reporting to Equifax, Experian, and TransUnion;

g. Award actual damages on all Counts, including damages for emotional distress, humiliation, and mental anguish;

h. Award additional damages under 12 U.S.C. § 2605(f)(1)(B) for Chase's pattern or practice of noncompliance;

i. Award punitive damages under 42 U.S.C. § 3613(c)(1), which sets no statutory limit, in an amount not less than $1,000,000, and statutory and punitive damages under 15 U.S.C. §§ 1681n and 1681o;

j. Award damages under Mont. Code Ann. § 30-14-133(1)(a), including up to three times the actual damages pleaded in Count VI;

k. Award damages on Count VII, including emotional distress damages;

l. Award actual damages and additional damages of up to $1,000 against Halliday, Watkins & Mann, P.C. and, in the alternative, Chase under 15 U.S.C. § 1692k (Counts VIII and XII);

m. Award actual damages, punitive damages of not more than $10,000, and equitable and declaratory relief under 15 U.S.C. § 1691e (Count IX);

n. Award actual damages and statutory damages under 15 U.S.C. § 1640(a) (Count X);

o. Enter the declarations sought in Count XI, including that any judgment, order of sale, or sale obtained in No. DV-41-

2026-0000438-FO while 12 C.F.R. § 1024.41(g) bars it is void, and, in the alternative, that any trustee's sale of the Property conducted without the notice Mont. Code Ann. § 71-1-315(1)(a) requires is void, and enjoin any sale of the Property that does not comply with them;

p. Declare that Plaintiff's right to reinstate under Section 19 of the Mortgage runs to five days before any sale, and order Chase to state on request and honor a reinstatement figure good through that date, and, in the alternative, declare Plaintiff's right to cure under Mont. Code Ann. § 71-1-312 (Count XIII);

q. Enter the declaration sought in Count XIV and, under 28 U.S.C. § 2202, order Chase and Halliday to evaluate and act on any short sale, deed in lieu, reinstatement, payoff, or refinance of the Loan without treating the Iowa orders as a bar;

q-1. Enter the declaration sought in Count XV, including a declaration that the May 28, 2026 order in EQCE087175 was entered in the clear absence of all jurisdiction, on each of the eight grounds stated in paragraph 180, and is a nullity as to the Property and as to Plaintiff, and grant the further relief against Chase and Halliday described in Count XV; Plaintiff seeks no damages against Judge Seidlin;

q-2. In the alternative, enter the prospective declaration sought in paragraphs 184 through 186 that continued enforcement of the May 28, 2026 order against the Property and against Plaintiff violates the Fourteenth Amendment, and grant injunctive relief against Judge Seidlin in his official capacity only on the terms 42 U.S.C. § 1983 permits;

q-3. Enter the declaration sought in Count XI, paragraph 137B, that Chase and Halliday may not move for a foreclosure judgment or order of sale, or conduct a sheriff's sale, in

Ravalli County No. DV-41-2026-0000438-FO while 12 C.F.R. § 1024.41(g) bars it, and that any judgment, order of sale, or sale obtained while the bar stands is void as against Plaintiff and the Property; and, under 28 U.S.C. § 2202, order Chase and Halliday to withdraw or stay their prosecution of that action until Chase completes the evaluation § 1024.41(c) requires and the appeal period § 1024.41(h) provides has run;

q-4. Award compensatory damages on Count XVI for emotional distress and its physical manifestations, and punitive damages under Mont. Code Ann. § 27-1-221;

r. Award Plaintiff his costs, and attorney fees under Mont. Code Ann. § 30-14-133(3); and

s. Grant such further relief as the Court deems just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: October 29, 2026.

Respectfully submitted,

/s/ Jaysen McCleary
Jaysen McCleary
1763 Red Crow Rd, Victor MT 59875
(406) 880-4424
jaysenmccleary@gmail.com
Plaintiff, Pro Se

## VERIFICATION

I, Jaysen McCleary, declare under 28 U.S.C. § 1746 that I am the Plaintiff, that I have read the foregoing Complaint, and that the factual allegations in it are true and correct to the best of my knowledge, except as to matters stated on information and belief, which I believe to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2026, at Victor, Montana.

/s/ Jaysen McCleary
Jaysen McCleary